# IN THE SUPREME COURT OF IOWA

No. 31 / 06–1387

Filed October 3, 2008

**SANDRA K. SCHADENDORF**
f/k/a **SANDRA K. WEISHAAR**,

Appellant,

vs.

**SNAP-ON TOOLS CORPORATION**,

Appellee.

---

Appeal from the Iowa District Court for Kossuth County, Don E. Courtney, Judge.

The claimant and the employer appeal a decision awarding the claimant penalty benefits under Iowa Code section 86.13 (1999). **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**

Mark S. Soldat of Soldat & Parrish-Sams, P.L.C., West Des Moines, for appellant.

Michael S. Roling of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, LLP, Des Moines, for appellee.

**WIGGINS, Justice.**

In this appeal, a claimant and her employer challenge the workers' compensation commissioner's award of penalty benefits under Iowa Code section 86.13 (1999). The district court affirmed the award of penalty benefits; however, it remanded the case to the agency to determine whether further penalty benefits were due. Because we find the workers' compensation commissioner was correct in awarding penalty benefits to the claimant and the claimant is not entitled to further benefits, we reverse the judgment of the district court remanding the case for further proceedings before the workers' compensation commissioner and direct the district court to affirm the decision of the commissioner.

## I. Factual Background.

This case arises out of a July 26, 1999, decision of the workers' compensation commissioner awarding Sandra K. Schadendorf f/k/a Sandra K. Weishaar workers' compensation benefits from her employer, Snap-On Tools Corporation. The July 26 award for back benefits totaled $72,166.32. Snap-On was also required to pay interest on the benefits. On August 9 Schadendorf's attorney wrote a letter to Snap-On advising Snap-On of his calculations as to the amount owed on the judgment including interest and costs as of August 25. The interest on the award was calculated to be $43,796.26, making the total amount due to Schadendorf $115,962.58. In the same letter, the attorney asked Snap-On to advise him if it did not agree with his calculations. Finally, the attorney said,

> please be advised that if we cannot agree by 8/18/99 on whether these amounts will be paid and whether all parties agree not to seek judicial review, I will have to file a judicial review, as well as a motion for judgment, just to protect my client's rights.

On August 16 Snap-On made the decision not to appeal the award and to pay the amount as calculated in the August 9 letter. Snap-On communicated this decision telephonically to Schadendorf's attorney. On August 18 Schadendorf's attorney confirmed by letter that Snap-On was going to pay the award. In the same letter the attorney advised Snap-On that if payment was not received by August 24, he would file a judicial review action to protect his client's rights.

Because Schadendorf did not receive payment, she filed a petition for judicial review and a motion for judgment in the district court. On September 7 the court entered a judgment against Snap-On for the total amount of the award plus interest.

On September 8 Snap-On mailed a check in the amount of $115,962.58 to Schadendorf's attorney. Snap-On's attorney acknowledged in his transmittal letter that because the check was late he was requesting an additional check to cover the remaining balance. Schadendorf's attorney received the check for $115,962.58 on September 9. On September 14 Schadendorf's attorney wrote another letter to Snap-On indicating that they still owed $2442.76. The attorney also indicated that the per diem interest rate was $.70.

On September 24 Snap-On made a payment of $2442.76, which was acknowledged by Schadendorf's attorney. In addition to acknowledging receipt of the check, Schadendorf's attorney informed Snap-On that there was another $10.04 due. On September 29 Snap-On mailed a check in the amount of $10.07 to Schadendorf's attorney. On September 30, 1999, Schadendorf dismissed her petition for judicial review and satisfied the judgment she had transcribed to the district court. We will set out additional facts as they relate to the issues.

## II. Prior Proceedings.

Schadendorf filed a review-reopening petition claiming penalty benefits under Iowa Code section 86.13 for Snap-On's delay in payment of benefits as originally awarded on July 26, 1999. On May 15, 2001, a deputy workers' compensation commissioner filed her decision. The deputy determined Schadendorf was entitled to a penalty benefit of $36,083.16. The deputy found the delay in paying the award was unreasonable. She determined that the penalty benefit should be the maximum allowed by law, fifty percent of the amount of benefits that were unreasonably delayed. She limited the fifty percent penalty benefits award to the principal amount of the July 26, 1999, award because in *Davidson v. Bruce*, 594 N.W.2d 833, 840 (Iowa Ct. App. 1999), the court of appeals held penalty benefits were not available for delayed payments of interest. This decision was appealed within the agency.

On January 30, 2002, the commissioner issued a final decision. The commissioner determined as a matter of law there can be no penalty benefits awarded while a petition for judicial review is pending because there can be no delay in payment during the pendency of the judicial review decision. Alternatively, the commissioner found if the benefits were payable, the delay was not unreasonable because of the pending judicial review petition. Schadendorf filed a petition for judicial review.

On October 28, 2002, the district court reversed that part of the commissioner's decision holding the filing of a petition for judicial review excuses a party from paying benefits because the Code provides for a stay during the appeal process. This decision was appealed to the supreme court. We assigned the case to our court of appeals. The court of appeals found the payments due to Schadendorf were due long before the July 26, 1999, decision. It held that a penalty benefit could be

assessed if there was unreasonable delay in making payments under Iowa Code section 86.13. The court of appeals determined the delay was reasonable until the July 26 decision was filed because the amount due prior to that date was fairly debatable. The court of appeals remanded the decision back to the commissioner to determine whether the delay after July 26 was unreasonable under the evidence.

On August 25, 2005, the commissioner issued a remand decision. The commissioner held that there was no unreasonable delay until August 25, 1999, the date used in Schadendorf's August 9 letter to calculate the amount of benefits and interest due under the decision. The commissioner held the delay was unreasonable after August 25. Accordingly, the commissioner found an unreasonable delay for fourteen, twenty-nine, and thirty-five days respectively. The commissioner awarded a $10,000 penalty benefit for the delay. In determining the amount of penalty benefits to award Schadendorf, the commissioner only considered the benefits awarded and not the interest due on the benefits. Schadendorf filed a petition for judicial review. Snap-On filed a cross-petition for judicial review.

On July 28, 2006, the district court entered its judicial review decision. The district court found no evidence to support the finding that the delay in paying benefits was reasonable prior to August 25, 1999. It remanded the case to the commissioner for determination of the reasonableness of the delay from July 27 until August 25. The district court affirmed the $10,000 penalty benefit for the delay after August 25. Schadendorf argued in the district court that interest on the penalty benefit should begin to run from the May 2001 decision of the deputy, the date the deputy first awarded a penalty benefit, rather than from the remand decision. The district court determined interest ran from

August 25, 2005, the date of the remand decision. Finally, the district court held penalty benefits are not available on delayed payments of interest even if the interest payments were unreasonably delayed. Both Schadendorf and Snap-On have appealed this decision.

### III. Issues.

To decide this appeal, we need to address the following issues raised by the parties: (1) whether the district court was correct to remand the case to the commissioner to determine whether penalty benefits were due prior to August 25, 1999; (2) whether substantial evidence supports the award of penalty benefits after August 25, 1999; (3) whether Schadendorf is entitled to penalty benefits on the interest due on her benefits if the payment of this interest has been unreasonably delayed; and (4) whether interest on the penalty benefit award runs from the date of the deputy's decision or from the date of the commissioner's remand decision.

### IV. Commissioner's Award of Penalty Benefits.

Section 17A.19(10) of the Code governs the standard upon which we review a decision of the commissioner. It is well settled that " '[t]he interpretation of workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency.' " *Lakeside Casino v. Blue*, 743 N.W.2d 169, 173 (Iowa 2007) (citation omitted). Therefore, when we interpret a workers' compensation statute we will not give the commissioner's interpretation of the law deference and are free to substitute our own judgment. *Id.*; *see also* Iowa Code § 17A.19(10)(*c*) (1999 Supp.).

When reviewing the agency's factual determinations, we determine whether the factual determinations are based on "substantial evidence in the record before the court when that record is viewed as a whole." Iowa

Code § 17A.19(10)(*f*) (1999 Supp.). The Code defines "substantial evidence" as

> [T]he quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

*Id.* § 17A.19(10)(*f*)(1). The factual determinations made by the workers' compensation commissioner are " 'clearly vested by a provision of law in the discretion of the agency,' " together with the application of the law to those facts. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004) (citation omitted). When applying the "substantial evidence" standard to the agency's fact-finding, we must give the agency the appropriate discretion. *Id.* We review an agency's decision to determine whether its application of the law to the facts was " 'irrational, illogical, or wholly unjustifiable.' " *Id.* (citation omitted). This standard of review affords appropriate deference to the agency. *Id.*

The commissioner may award penalty benefits on benefits that were unreasonably delayed or denied. Iowa Code § 86.13. The Code provides in relevant part that

> [i]f a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

*Id.* To receive a penalty benefit award under section 86.13, the claimant must first establish a delay in the payment of benefits. *Keystone Nursing Care Ctr. v Craddock*, 705 N.W.2d 299, 307 (Iowa 2005). The burden then shifts to the employer to prove a reasonable cause or excuse for the

delay. *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996).

We will divide our analysis of the commissioner's award of the penalty benefits issue into two sections. In the first section, we will discuss the commissioner's decision not to award penalty benefits for the period between July 26, 1999, the date of the decision awarding benefits, and August 25, 1999. In the second section, we will discuss whether substantial evidence supports the award for penalty benefits for the period between August 26, 1999, to the date the benefits were paid, September 29, 1999.

**A. Whether the Commissioner Erred by Not Awarding Penalty Benefits for the Time Period From July 26, 1999, to August 25, 1999**. The commissioner found Snap-On did not introduce evidence providing a reasonable cause or excuse for delaying payment to August 25, 1999. However, the commissioner reviewed the entire record, including the evidence introduced by Schadendorf, and determined the delay until August 25 was reasonable. The district court reversed this decision because Snap-On had not provided any evidence that the reasonable cause or excuse found by the commissioner was in fact the reason for its delayed payment.

We review the record as a whole to determine if substantial evidence exists to support the commissioner's findings of fact. Iowa Code § 17A.19(10)(*f*). Accordingly, we consider all the evidence introduced, not just the evidence introduced by Snap-On, to determine if Snap-On met its burden and established that it had reasonable cause or excuse to delay the payment of benefits until August 25, 1999.

The commissioner handed down the decision awarding compensatory benefits on July 26, 1999, and mailed it to each party's

attorney on that date. As testified to by the Snap-On representative, Snap-On had to make a decision whether to appeal the award or pay it. If Snap-On decided to pay the award, it would have to request the funds from its home office. No one disagrees that it would have taken some period of time for Snap-On to pay the award if it decided not to appeal. Therefore, the question is whether it was reasonable for Snap-on to delay paying the award before August 25. On our review of the record, we find substantial evidence supports the commissioner's finding that the delay was reasonable.

Schadendorf's August 9 letter calculated the amount owed under the July 26 decision, including interest and costs as of August 25. The letter gave Snap-On until August 18 to make a decision as to whether to pay the amount owed, or else Schadendorf would seek judicial review of the commissioner's decision. On August 16 Snap-On informed Schadendorf's attorney that it would pay the award. On August 18 Schadendorf's attorney informed Snap-On that if payment was not received by August 24, he would file a judicial review action to protect his client's rights. The correspondence between the parties constitutes substantial evidence that Schadendorf considered August 25 a reasonable time in which to receive payment of her benefits.

Thus, the record contains substantial evidence supporting the commissioner's finding in its August 25, 2005, remand decision that

> [i]n view of the communication from claimant's counsel on August 9, 1999, that requested payment as of August 25, 1999, the delay up to August 25, 1999, was reasonable. While employer likely should have acted sooner and issued payment on its own initiative before receiving the August 9, 1999, request from claimant's counsel, its failure to do so does not warrant a penalty in view of the totality of the circumstances. It is necessary to select a day in the future for payment due to the need to calculate interest and process payments. That inevitably causes some reasonable delay,

though not unlimited justification. The parties were communicating and cooperating regarding determining the correct amount owed and delay due to that type of interaction was not unreasonable.

Accordingly, we reverse the decision of the district court remanding the case back to the commissioner to determine penalty benefits for the period from July 26, 1999, to August 25, 1999, and affirm the decision of the commissioner not to award such benefits during that period.

**B. Whether Substantial Evidence Supports the Award of Penalty Benefits From August 26, 1999, to September 29, 1999.** In making its findings that the delay in the payment of benefits was unreasonably delayed after August 26, 1999, the commissioner found:

It was not reasonable for employer to ignore the impact of interest accruing from August 25, 1999, until it issued payment on September 8, 1999. Those adjusting workers' compensation claims are held to know the requirements and to be capable of performing routine mathematical calculations, including computing interest. While absolute perfection is not required, substantial compliance is expected. Claimant established that employer did not pay the compensation award until September 8, 1999, September 23, 1999, and September 29, 1999. The period of reasonable delay ended August 25, 1999. Claimant's payments were unreasonably delayed in the amount of 14 days, 29 days, and 35 days.

The commissioner then awarded Schadendorf a $10,000 penalty benefit for the delay.

Snap-On argues substantial evidence does not support a finding of unreasonable delay. We disagree with Snap-On. We agree with the commissioner that there is no evidence in the record supporting Snap-On's claim its delay was reasonable after August 25. Therefore, Snap-On failed to carry its burden to show that the delay after August 25 was reasonable. Accordingly, we affirm the decisions of the district court and the commissioner on this issue.

Snap-On further argues if we find substantial evidence supports a finding of unreasonable delay, there is not substantial evidence to support the amount assessed. On the other hand, Schadendorf argues in her brief that the penalty benefit is too small. As of August 26, Snap-On unreasonably delayed the payment of $72,166.32 in benefits. Even though Snap-On made substantial payments on September 8 and 24, Snap-On did not pay Schadendorf all of her benefits until September 29 because the payments made by Snap-On were applied first to interest and then to unpaid benefits. *Christensen*, 554 N.W.2d at 259.

The maximum penalty benefit allowed is fifty percent of the amount of benefits that were unreasonably delayed. Iowa Code § 86.13. Thus, the maximum penalty benefit allowed by law was $36,083.16. The factors the commissioner should consider when awarding penalty benefits are "the length of the delay, the number of the delays, the information available to the employer regarding the employee's injuries and wages, and the prior penalties imposed against the employer under section 86.13." *Robbennolt v. Snap-On Tools Corp.*, 555 N.W.2d 229, 238 (Iowa 1996).

The record establishes that on July 26, 1999, the commissioner determined the amount of benefits Schadendorf was due for her work-related injury. The August 9 letter from Schadendorf's attorney calculated the amount due with interest as of August 25. On August 16, Snap-On agreed with the calculations and informed Schadendorf that it would be paying Schadendorf the amount as calculated. Without any explanation as to the delay, Snap-On did not make its payment until September 8. When it made its payment, it failed to include all of the amounts due. It took two more letters from Schadendorf's attorney to get Snap-On to pay Schadendorf all of her benefits. The record also

disclosed this was not the first time Snap-On failed to pay benefits. As the commissioner noted in his decision, Snap-On has been the subject of several cases where a penalty benefit was imposed for its unreasonable delay in paying benefits.

Just because the interpretation of the evidence is open to a fair difference of opinion does not mean the commissioner's decision is not supported by substantial evidence. *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 603 (Iowa 2004). An appellate court should not consider evidence insubstantial merely because the court may draw different conclusions from the record. *Fischer v. City of Sioux City*, 695 N.W.2d 31, 33–34 (Iowa 2005). Balancing the short delay in payment of benefits with Snap-On's repeated conduct of unreasonably delaying benefits in this and other cases, substantial evidence supports the amount of the penalty benefit awarded by the commissioner.

Accordingly, we affirm the decisions of the district court and the commissioner on the amount of the penalty benefit awarded after August 25, 1999.

**V. Whether Schadendorf is Entitled to Penalty Benefits on the Interest Due on Her Benefits if the Payment of This Interest has Been Unreasonably Delayed.**

To decide this issue we must interpret section 86.13. Thus, we will not give the commissioner's interpretation of the law deference and are free to substitute our own judgment as to the interpretation of the statute. *Lakeside Casino,* 743 N.W.2d at 173; *see also* Iowa Code § 17A.19(10)(*c*).

The Code provides for a penalty benefit to be assessed against the employer if the "commencement or termination of benefits occurs without reasonable or probable cause or excuse." Iowa Code § 86.13. To resolve

whether Schadendorf is entitled to penalty benefits for an unreasonable delay in the payment of the interest due on her benefits, we must determine whether the word "benefits" in section 86.13 includes interest due on the benefits awarded.

When confronted with the task of determining the meaning of a statute, we have stated:

> The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). The interpretation of a statute requires an assessment of the statute in its entirety, not just isolated words or phrases. *State v. Young*, 686 N.W.2d 182, 184–85 (Iowa 2004). Indeed, "we avoid interpreting a statute in such a way that portions of it become redundant or irrelevant." *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 162 (Iowa 1999) (citation omitted). We look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results. *Harden v. State*, 434 N.W.2d 881, 884 (Iowa 1989).

The first indication that the legislature did not intend the word "benefits" in section 86.13 to include the interest due on an award of compensation can be seen from the plain meaning of the words "benefit" and "interest." A "benefit" is defined as "[f]inancial assistance that is received from an employer, insurance, or a public program (such as social security) in time of sickness, disability, or unemployment." *Black's Law Dictionary* 151 (7th ed. 1999). "Interest" is defined as "[t]he

compensation fixed by agreement or allowed by law for the use or detention of money, or for the loss of money by one who is entitled to its use. . . ." *Id.* at 816.

Under these definitions, the benefits awarded in this case were for temporary partial permanent disability, healing period compensation, and permanent partial disability. The amount of these benefits total $72,166.32. Any additional sums due and owing Schadendorf were for the loss of use of these benefits or interest on the benefits. A "benefit" is distinct and separate from "interest" due on a benefit. Therefore, the plain meaning of the terms "benefit" and "interest" leads us to believe compensation due for loss of use of a benefit due by the employer is not a "benefit" under section 86.13.

The second indication that the legislature did not intend the word "benefits" in section 86.13 to include the interest due on an award of compensation is the statutory scheme of the workers' compensation statutes. Chapter 85 lists the various benefits due to an injured worker. *See, e.g.,* Iowa Code §§ 85.27 (providing medical benefits); 85.28 (providing burial expenses); 85.31 (providing benefits in death cases); 85.33 (providing temporary total and temporary partial disability benefits); and 85.34 (providing permanent disability benefits). On the other hand, chapter 85 has a separate provision for interest. *Id.* § 85.30. Section 85.30 provides "if [compensation payments are] not paid when due, there shall be added to the weekly compensation payments, interest at the rate provided in section 535.3 for court judgments and decrees." *Id.* This separate treatment of benefits and interest by the legislature indicates that it did not intend the word "benefits" in section 86.13 to include the interest due on an award of compensation.

Finally, the legislative history of a statute is instructive of legislative intent. *State v. Dohlman*, 725 N.W.2d 428, 431–32 (Iowa 2006). The legislative history of section 86.13 indicates the legislature did not intend the word "benefits" in section 86.13 to include the interest due on an award of compensation. In the explanation to the bill enacting section 86.13, the committee on labor and industrial relations of the senate stated "section [86.13] gives the commissioner the authority to award penalty benefits if regular benefits were unreasonably delayed or denied." S.F. 539 Explanation, 77th Gen. Assemb., Reg. Sess. (Iowa 1982). The explanation does not include any provision for penalty benefits on interest due on regular benefits.

Based on the plain meaning of the word "benefit," the statutory scheme used by the legislature to award benefits and interest on those benefits, and the legislative history of section 86.13, we find the legislature did not intend the word "benefits" in section 86.13 to include the interest due on an award of compensation. Consequently, the commissioner was correct in not awarding a penalty benefit on the interest due on the benefits he awarded Schadendorf in his July 26, 1999, decision.

**VI. Whether Interest on the Penalty Benefits Award Runs From the Date of the Deputy's Decision or From the Date of the Commissioner's Remand Decision.**

Schadendorf claims interest on her award of penalty benefits should have started to run from the May 15, 2001, decision by a deputy workers' compensation commissioner awarding her penalty benefits. We disagree.

The decision of the commissioner is the final agency action. Iowa Code § 86.24(5). The commissioner overturned the May 15 decision of

the deputy awarding penalty benefits. Thus, as of May 15, there was no final agency action awarding Schadendorf penalty benefits. Because nothing was due, we cannot assess interest from May 15. Final agency action awarding penalty benefits did not occur until the commissioner issued his remand decision on August 25, 2005. Therefore, the district court and the commissioner were correct in awarding interest on these penalty benefits from August 25.

**VII. Disposition.**

Because the claimant is not entitled to any further penalty benefits, we reverse the district court's remand of the case to the workers' compensation commissioner to determine if further penalty benefits should be awarded. We affirm the remainder of the district court's decision. Accordingly, we remand the case to the district court to enter judgment affirming the August 25, 2005, remand decision of the workers' compensation commissioner.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except Baker, J., who takes no part.