# IN THE SUPREME COURT OF IOWA

No. 08–0639

Filed July 17, 2009

**DRAKE UNIVERSITY and EMPLOYERS
MUTUAL CASUALTY COMPANY,**

Appellants,

vs.

**ANGELA DAVIS,**

Appellee.

Appeal from the Iowa District Court for Polk County, Don C. Nickerson, Judge.

An employer and its insurance carrier appeal a decision of the district court affirming an award of benefits made by the workers' compensation commissioner. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

David L. Jenkins of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants.

Thomas J. Reilly and Kyle T. Reilly of Thomas J. Reilly Law Firm, P.C., Des Moines, for appellee.

**WIGGINS, Justice.**

The workers' compensation commissioner awarded an employee benefits for three separate injury dates. The employer and its insurance carrier sought judicial review of the agency action. The district court not only affirmed the decision of the agency, but also found the employer and its insurance carrier were not entitled to a credit for benefits paid by a group plan under Iowa Code section 85.38(2) (2005).[1] In this appeal, we find the employer and its insurance carrier were not deprived of procedural due process, substantial evidence supports the agency's decision, the permanent total disability benefits are not subject to apportionment under the workers' compensation statutes, the agency misapportioned the benefits due for the March 16, 2001, and July 31, 2002, injuries, and the district court should not have considered the credit for benefits issue. Therefore, we affirm in part the decision of the district court affirming the decision of the workers' compensation commissioner. However, we reverse that part of the district court judgment dealing with the apportionment of benefits for the March 16, 2001, and the July 31, 2002, injuries. Additionally, we vacate that part of the district court judgment dealing with the credit for benefits issue because the commissioner did not consider the issue at the agency level.

**I. Background Facts and Proceedings.**

**A. Employment History.** Angela Davis began working at Drake University[2] in the facility management area in May 1982. She worked at Drake moving up in pay scale and job title for twenty-two and one-half

---

[1]All references in this opinion will be to the 2005 edition of the Iowa Code unless otherwise noted.

[2]Drake University's insurance carrier, Employers Mutual Casualty Company, is also a party to this action. For the sake of brevity, we will refer to both parties as "Drake."

years until her termination on November 3, 2004. Davis started out as Facility Maintainer IV, the lowest position on the scale, doing custodial work in residence halls. Drake promoted her to Facility Maintainer III sometime in 1983. Drake promoted her again in 1985 to Facility Maintainer II in which position she trained new employees. Finally, Davis was promoted in 1990 to Facility Maintainer I, the top classification in the custodial field at Drake. Her responsibilities included answering the phone, arranging work schedules, training new employees, supervising student employees, and performing manual custodial work.

Although the university continued to promote her, it did have problems with her performance. Her employment records contained five disciplinary reports. Davis also had many run-ins with her boss, John Selin, the director of residential services throughout her time at Drake. Another supervisor claimed Davis did not respect her supervisors. Some of the complaints in Davis's employee file dealt with her job performance, but many more dealt with her interpersonal skills. At one point, Drake demoted her from Facility Maintainer I to Facility Maintainer II for creating a hostile work environment. Drake later bumped her back up to Facility Maintainer I status.

In September 2004, Drake claimed Davis left work early without finishing her work. Drake informed Davis that any further incident would result in disciplinary action against her. Drake terminated Davis on November 3 citing inflammatory and racist comments to coworkers as well as an ongoing pattern of inappropriate behavior toward supervisors and coworkers as the justification for the termination.

**B. March 16, 2001, Injury.** Davis's first injury occurred on March 16, 2001. She was shoveling snow outside a residential hall and

felt a sharp pain down her back and leg. The doctors diagnosed a left L5-S1 herniated nucleus pulposus and performed a left L5-S1 diskectomy. After her recovery, the doctors gave Davis a ten percent permanent partial impairment rating and a permanent lift restriction of thirty-five pounds. Drake voluntarily paid her seventy-five weeks of permanent disability for this injury.

**C. July 31, 2002, Injury.** On July 31, 2002, while performing her duties vacuuming in the law school, Davis felt queasiness in her stomach and weakness in her leg. An MRI scan revealed left L5-S1 epidural fibrosis plus a small recurrent herniated nucleus pulposus. She received three epidural steroid injections for her injury. The doctor assented to Davis's return to work with a twenty-pound lift restriction and allowed her to do only lightweight vacuuming on an occasional basis. He also gave her a two percent permanent partial impairment rating. Drake voluntarily paid her ten weeks of permanent disability for this injury.

**D. September 14, 2004, Injury.** Davis alleges her third injury occurred on September 14, 2004. Davis was working in the field house that day and was pulling trash across the floor when she felt queasy. She filled out an incident report of the injury. The incident report contained no statement as to the specifics of her injury, but she thought she told her supervisor how the injury occurred. The incident report stated Davis was going to Concentra Medical Center, but also said her disability was ongoing and began on March 16, 2001. Davis's supervisor filled out the incident report and Davis signed it.

At Concentra, Davis reported that her injury occurred around 8 a.m. and was from repetitive use of the vacuum and lifting more than twenty pounds of trash. Concentra referred her to her previous doctor.

She reported to this doctor that the onset of pain had increased on September 14, 2004. She denied a specific injury. The doctor diagnosed her with having a herniated nucleus pulposus and spondylolisthesis. The doctor opined the spondylolisthesis was not work-related, but the herniated nucleus was related to her work activities. He recommended surgical intervention.

Davis decided on November 2 to proceed with surgery. Drake fired her the next day. Drake sought a second opinion before authorizing any surgery. Davis told the doctor retained by Drake about the specific incident of dragging trash in the field house and the pain she felt after that point. On November 17 the second doctor opined Davis's current complaints related back to the original injury in March 2001. The second doctor acknowledged his opinion was based on his review of a July 2002 MRI and he did not have her recent MRI to study.

Based on this report, Drake would not authorize her surgery. Additionally, Drake informed Davis that Drake had no notice of increased back pain or the specific September 14 incident; therefore, it would be denying her claim for the surgery and any other subsequent treatment. Without Drake's authorization, Davis had the surgery on November 22. Davis also had a permanent implantation of a dorsal column stimulator on August 15, 2005. A third physician rated Davis's injury. He gave Davis an impairment rating of twenty-six percent for the September 14, 2004, injury, which includes a three percent impairment based on the pain from the dorsal stimulator.

Davis also saw a psychologist. The psychologist diagnosed Davis with major depression disorder and opined her depression was related to her work injury. He further opined Davis's depression limited her ability

to function in a normal society, and that she would likely require indefinite psychological care in the future.

Again, Drake referred Davis to a psychiatrist for a second opinion. He found Davis had a twenty-plus year history of interpersonal relationship problems. Further, he opined the idea that her depression stemmed from injuries lacked credence because she did not seek treatment and no psychiatric diagnosis indicated Davis was unable to work.

**E.    Proceedings before the Iowa Workers' Compensation Commissioner.** Davis filed her petitions in September 2004 as files 5012800, 5012801, and 5012802. File number 5012800 alleges an injury date of March 16, 2001, with shoveling snow as the cause of the injury. File number 5012801 lists the injury date as July 31, 2002, and alleges vacuuming as the cause of the injury. File number 5012802 alleges repetitive use of back at work as the cause with an injury date of September 14, 2004.

Davis amended her petition in file number 5012802 on November 22. In that amended petition Davis stated that on September 14, 2004, as she "carried out her work duties 'dragging a bag of trash,' her back and leg pain was intensified and thus she reported her injury." Davis asked to amend the "petition to reflect the cumulative process by which her injury occurred culminating with the intensified pain she felt on 9/14/04 when she was dragging a bag of trash." She also amended her petition to include a claim for penalty benefits under Iowa Code section 86.13 stating Drake failed to provide reasonable justification for refusing to commence weekly and medical benefits.

Prior to the hearing, the parties filed hearing reports in each of the files. The deputy commissioner approved each hearing report by signing

an order.  The orders confirmed the parties' stipulation that the injuries of March 16, 2001, and July 31, 2002, arose out of and were in the course of employment.  The orders also confirmed the March 16, 2001, injury caused a permanent disability and the commencement date for the permanent partial disability benefits for this injury would be July 21, 2001.  The orders further confirmed the parties did not dispute that Drake paid Davis seventy-five weeks of compensation for this injury.  Finally, the orders confirmed the parties' stipulation that the commencement date for the permanent partial disability benefits for the July 31, 2002, injury would be August 21, 2002, and that Drake had paid Davis ten weeks of compensation.

The orders indicated the following issues relevant to this appeal were in dispute: (1) whether the July 31, 2002, injury caused a temporary or permanent disability; (2) whether Davis suffered an injury on September 14, 2004, arising out of and in the course of her employment; (3) the amount of benefits, if any, due from the three injuries; (4) the apportionment of benefits among the three injuries; and (5) the payment of medical expenses for the September 14 injury.  The parties reserved the issue of credit for benefits paid for by a group plan for another day.

The deputy workers' compensation commissioner issued the arbitration decision.  The deputy found Davis to be credible.  He determined Davis suffered a low back injury on September 14, 2004, when dragging trash bags and performing other duties at work.  The deputy also found Davis did have mental health problems causally related to her work injuries.  The deputy further determined the medical expenses submitted for this injury were fair and reasonable.

Additionally, the deputy determined the work injury on March 16, 2001, caused a fifteen percent permanent partial disability entitling Davis to seventy-five weeks of benefits. He found the July 31, 2002, injuries caused a thirty percent permanent partial disability entitling Davis to 150 weeks of benefits. Finally, he found the September 14, 2004, injury caused a one hundred percent loss of earning capacity entitling Davis to permanent total disability benefits during her period of disability and continuing throughout her lifetime, absent improvement. He also determined the benefits for this injury would begin on November 3, 2004.

The deputy recognized the overlap in benefits regarding the first two injuries. He stated the overlap was from August 21, 2002, through December 3, 2002, based on the stipulated commencement dates of each benefit. Under Iowa Code section 85.36(9)(*c*) (2003), the deputy apportioned the benefits between the first and second injury.

The deputy also recognized an overlap in benefits regarding the second and third injuries. He did not apportion these benefits because the legislature repealed section 85.36(9)(*c*), effective September 7, 2004. 2004 First Extraordinary Session Iowa Acts ch. 1001, §§ 12, 18. In its place, the legislature enacted section 85.34(7). *Id.* § 11. This section was effective September 7, 2004, and applied to all injuries occurring after its effective date. *Id.* § 18. The deputy held section 85.34(7)(*b*) does not apply to a permanent total disability when the same employer is involved.

Drake filed for reconsideration before the deputy. The deputy corrected a typographical error and reaffirmed his decision. Drake appealed the decision to the commissioner. The commissioner affirmed and adopted the deputy's decision as the final agency action. Drake then

requested judicial review by the district court. The district court affirmed the decision of the workers' compensation commissioner. The district court also ruled Drake was not entitled to a credit for benefits under a group plan. Drake appealed the decision of the district court to this court.

**II. Issues.**

Drake appeals claiming: (1) the agency violated its due process rights when the commissioner found an injury date of September 14, 2004; (2) substantial evidence did not support the commissioner's findings; (3) the commissioner miscalculated the apportionment between the March 16, 2001, injury and the July 31, 2002, injury; (4) the commissioner misapplied the apportionment of benefit statute to the September 14, 2004, injury; and (5) the agency failed to provide a credit for benefits under a group plan.

**III. Analysis.**

**A. Due Process.** Drake claims the agency violated its due process rights when the agency found Davis suffered a low back injury on September 14, 2004, when dragging trash bags and performing other duties at work. Drake bases this claim on the belief that Davis did not allege a specific injury occurring on September 14. Therefore, Drake claims its procedural due process rights were violated because Drake did not have notice and an opportunity to defend the claim.

We can reverse, modify, or grant other relief if the agency action is unconstitutional as applied to a party. Iowa Code § 17A.19(10)(*a*). We review constitutional issues raised in an agency proceeding de novo. *Insituform Techs., Inc. v. Employment Appeal Bd.*, 728 N.W.2d 781, 788 (Iowa 2007). The Fourteenth Amendment requires that a party to an agency proceeding have notice and an opportunity to defend. *Carr v.*

*Iowa Employment Sec. Comm'n,* 256 N.W.2d 211, 214 (Iowa 1977). Our review of the record reveals Drake had notice and an opportunity to defend Davis's claim that she suffered a low back injury on September 14, 2004, when dragging trash bags and performing other duties at work.

Davis filed her petition on September 16, 2004. The petition stated the cause of injury was the "[r]epetitive use of back at work." Although Drake may not have recognized it as a specific injury, Davis had filed an incident report with the school on that date. In that incident report, her supervisor acknowledged she was going to seek medical care at Concentra Medical Center. Davis told the physicians at Concentra her injury occurred around 8 a.m. and was from repetitive use of the vacuum and lifting more than twenty pounds of trash.

After Drake received a medical report from the physician it retained to give an opinion as to whether Davis's surgery was work-related, Drake's attorney sent a letter to Davis's attorney stating that Drake did not know of any incident that increased the lower back pain. The history Davis gave to the physician retained by Drake states, "she was dragging trash in the field house and apparently was hung up in a doorway. She felt sharp pain in her back . . . ." The physician sent his report to Drake on November 17. On November 22 Davis amended her petition and stated that on September 14, 2004, as she "carried out her work duties 'dragging a bag of trash,' " she suffered intensified pain in her left leg and back. Additionally, Drake signed a hearing report indicating it disputed whether Davis suffered an injury on September 14.

As early as November 2004, Drake knew the cause of Davis's September 14 injury was an issue in this case. It was at this time Davis claimed the injury occurred when the trash she was dragging hung up in

a doorway. The hearing took place in April 2006. This information and its timing gave Drake ample notice and opportunity to defend the claim. Drake's claim of a due process violation is meritless.

**B. Substantial Evidence.** Drake makes multiple claims alleging substantial evidence did not support the commissioner's findings. Specifically, Drake claims substantial evidence does not support the agency decision: (1) finding Davis sustained a work-related injury on September 14, 2004; (2) awarding Davis permanent partial disability benefits for the July 31, 2002, injury; (3) declaring Davis permanently and totally disabled; and (4) awarding medical expenses.

The legislature vested the determination of facts with the Iowa Workers' Compensation Commissioner. Iowa Code §§ 86.14–.24. Therefore, we review the record as a whole for substantial evidence. *Id.* § 17A.19(10)(*f*) (stating we review an agency's "determination of fact clearly vested by a provision of law in the discretion of the agency" for substantial evidence). Substantial evidence is:

> [T]he quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

*Id.* § 17A.19(10)(*f*)(1). Viewing the record as a whole means:

> that the adequacy of the evidence in the record before the court to support a particular finding of fact must be judged in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses and the agency's explanation of why the relevant evidence in the record supports its material findings of fact.

*Id.* § 17A.19(10)(*f*)(3).

A decision of an agency does not lack substantial evidence merely because the interpretation of the evidence is open to a fair difference of opinion. *Myers v. F.C.A. Servs., Inc.,* 592 N.W.2d 354, 356 (Iowa 1999). Even if we can draw different conclusions from the evidence, we must decide whether the evidence supports the actual finding made by the agency, not whether the evidence would support a different finding. *Raper v. State,* 688 N.W.2d 29, 36 (Iowa 2004). It is not the job of the district court or the appellate court to determine what "evidence 'trumps' other evidence or whether one piece of evidence is 'qualitatively weaker' than another piece of evidence" when it conducts a substantial evidence review of an agency decision. *Arndt v. City of Le Claire,* 728 N.W.2d 389, 394 (Iowa 2007). The legislature left those determinations to the agency.

The agency found Davis to be a credible witness. It also weighed the testimony of the various physicians who testified as to Davis's physical and mental conditions. Although the record contains conflicting evidence as to (1) whether Davis sustained a work-related injury on September 14, 2004; (2) whether she suffered a permanent partial disability from the July 31, 2002, injury; (3) whether Davis suffered a permanent total disability due to the September 14, 2004, injury; and (4) whether Davis was entitled to the medical benefits awarded by the agency, our review of the record reveals substantial evidence supports the agency's findings as to these issues. Consequently, Drake's claims regarding the lack of substantial evidence are also without merit.

**C.  Apportionment of Benefits.**  Drake makes two separate arguments concerning the apportionment of benefits. First, it claims the commissioner wrongly apportioned the benefits paid due to the March 16, 2001, injury and the July 31, 2002, injury. Second, it argues

the commissioner should have apportioned the benefits paid due to the July 31, 2002, injury and the September 14, 2004, injury.

1. *Apportionment between March 16, 2001, and July 31, 2002, injuries.* Drake argues the overlap in permanent partial disability benefits for the March 16, 2001, injury and the benefits from the July 31, 2002, injury should have been apportioned under Iowa Code section 85.36(9)(*c*) (2003). Although, the agency apportioned the benefits between the March 16, 2001, and July 31, 2002, injuries under section 85.36(9)(*c*), Drake argues the agency did not compute the correct overlap time.

The resolution of this issue involves the agency's application of law to the facts. The legislature clearly vested the agency with the application of the law to the facts. Iowa Code §§ 86.14–.24. We are required to give the agency appropriate deference because the legislature vested the application of the law to the facts with the agency. *Id.* § 17A.19(11)(*c*). We give the agency the appropriate deference by only reversing or modifying the agency action "upon an irrational, illogical, or wholly unjustifiable application of law to fact." *Id.* § 17A.19(10)(*m*).

The agency determined the March 16, 2001, injury caused a fifteen percent permanent partial disability and the July 31, 2002, injury caused a thirty percent permanent partial disability. The March 16 injury entitled Davis to seventy-five weeks of permanent partial disability benefits. Drake paid seventy-five weeks of disability compensation for this injury at the rate of $287.18 per week. The starting date for these payments was July 21, 2001.

For the July 31 injury, Drake was required to pay 150 weeks of disability compensation at the rate of $305.52 per week beginning on August 21, 2002. The agency calculated that the overlap time extended

from August 21, 2002, through December 3, 2002. During the overlap period, the agency ordered Drake to pay $18.34 per week on the second injury, the difference between the rates for these two injuries. Starting on December 4, 2002, the agency ordered Drake to start paying $305.52 per week, the rate due on the July 31 injury.

The agency miscalculated the period of overlap. The agency ordered Drake to pay benefits for seventy-five weeks due to the March 16 injury. If the payments started on July 21, 2001, they would end on December 27, 2002, not December 3, as calculated by the agency. This miscalculation by the agency is an illogical application of law to fact. Therefore, Drake should have paid $18.34 per week through December 27, 2002, for the July 31 injury and started paying the $305.52 per week for this injury on December 28, 2002.

2. *Apportionment between July 31, 2002, and September 14, 2004, injuries.* Drake claims the commissioner erred by not apportioning Davis's permanent total disability benefits. We generally do not apportion the benefits from two successive work-related injuries without a statute allowing us to do so. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004). Therefore, the workers' compensation statutes control the apportionment of benefits.

Presently, Iowa Code section 85.34(7) governs the apportionment of benefits. Section 85.34(7) became effective September 7, 2004, and applied to all injuries occurring on or after its effective date. 2004 First Extraordinary Session Iowa Acts ch. 1001, § 18. The injury that caused Davis's permanent total disability occurred on September 14, 2004. Thus, the resolution of the apportionment issue requires an interpretation of section 85.34(7).

It is well settled in Iowa that " ' "[t]he interpretation of workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency." ' " *Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 334 (Iowa 2008) (quoting *Lakeside Casino v. Blue*, 743 N.W.2d 169, 173 (Iowa 2007)).  Because the legislature has not clearly vested the agency with the interpretation of the law, we do not give the agency's view of the law any deference and can substitute our own judgment.  Iowa Code § 17A.19(11)(*b*); *Schadendorf*, 757 N.W.2d at 334.  Accordingly, our review is for errors at law.  Iowa Code § 17A.19(10)(*c*).

Section 85.34(7)(*b*) applies to successive injuries at the same place of employment with the same employer.  It provides in relevant part:

> If an injured employee has a preexisting disability that was caused by a prior injury arising out of and in the course of employment with the same employer, and *the preexisting disability was compensable under the same paragraph of section 85.34, subsection 2*, as the employee's present injury, the employer is liable for the combined disability that is caused by the injuries, measured in relation to the employee's condition immediately prior to the first injury.  In this instance, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer.

> If, however, an employer is liable to an employee for *a combined disability that is payable under section 85.34, subsection 2, paragraph "u"*, and the employee has a preexisting disability that causes the employee's earnings to be less at the time of the present injury than if the prior injury had not occurred, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer minus the percentage that the employee's earnings are less at the time of the present injury than if the prior injury had not occurred.

Iowa Code § 85.34(7)(*b*) (emphasis added).

In interpreting section 85.34(7)(*b*), we must determine legislative intent. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). We look to the words the legislature chose to determine legislative intent rather than what the legislature should or might have said. *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006). We "may not extend, enlarge or otherwise change the meaning of a statute" under the guise of construction. *Auen*, 679 N.W.2d at 590.

The plain and unambiguous language of section 85.34(7)(*b*) indicates the only benefits subject to apportionment are those awarded under section 85.34(2). Section 85.34(2) benefits include scheduled benefits and permanent partial disability of the body as a whole. The agency awarded Davis permanent total disability benefits under section 85.34(3). Permanent total disability benefits are not subject to apportionment under section 85.34(7).

This interpretation is consistent with section 85.34(7)'s legislative history. The legislature stated when it enacted the new apportionment statute that it was intended to avoid "all double recoveries and all double reductions in workers' compensation benefits for *permanent partial disability*." 2004 First Extraordinary Session Iowa Acts, ch. 1001, § 20 (emphasis added). Without an apportionment statute that applies to an award of permanent total disability benefits, there is no basis for the agency to apportion the award. *See Celotex Corp. v. Auten*, 541 N.W.2d 252, 256 (Iowa 1995) (holding the industrial commissioner could not apportion benefits without a statute authorizing him to do so; therefore, the full responsibility rule was applicable). Therefore, the agency was correct when it refused to apportion Davis's permanent total disability benefits.

**D. Credit for Benefits Under a Group Plan.** An employer may be entitled to a credit against an award of workers' compensation benefits for the benefits an employee received under a group plan. Iowa Code § 85.38(2). The district court addressed the credit for benefits issue and found Drake was not entitled to a credit.

The agency did not address the credit for benefits issue in its final decision. We believe the agency did not address this issue because the parties stipulated in the hearing report that any credit to which the employer may be entitled under section 85.38(2) was "to be determined." When the deputy signed the order approving the hearing report, he entered a hand-written note next to the section dealing with section 85.38(2). The notation stated the "parties [are] not asking for this [to be] determined now."

Iowa Code section 17A.19 governs judicial review of agency action. "A person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review . . . ." Iowa Code § 17A.19(1). Drake is not aggrieved or adversely affected by a decision of the agency regarding the credit for benefits issue because the agency never ruled on the issue. Thus, the district court should not have considered the issue.

**IV. Disposition.**

We affirm in part the decision of the district court affirming the judgment of the workers' compensation commissioner. However, we must reverse that part of the district court judgment dealing with the apportionment of benefits for the March 16, 2001, and the July 31, 2002, injuries. Additionally, we must vacate that part of the district court judgment dealing with the credit for benefits issue because the commissioner did not consider the issue at the agency level.

Accordingly, we remand the case to the district court to enter judgment consistent with this opinion and then the district court should remand the matter to the agency for entry of a decision consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**