# IN THE COURT OF APPEALS OF IOWA

No. 18-1629
Filed July 24, 2019

**TERRY TILTON,**
    Petitioner-Appellee,

**vs.**

**H.J. HEINZ COMPANY and LIBERTY MUTUAL INS. CO.,**
    Respondents-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


An employer and its workers' compensation insurance carrier appeal a district court ruling on Terry Tilton's petition for judicial review of a determination of the workers' compensation commissioner. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


Nathan R. McConkey of Huber, Book, Lanz & McConkey, P.L.L.C., West Des Moines, for appellants.

Matthew D. Dake and Thomas M. Wertz of Wertz, Dake & Anderson, Cedar Rapids, for appellee.


Heard by Potterfield, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

H.J. Heinz Company (Heinz) and its workers' compensation insurance carrier appeal a district court ruling on Terry Tilton's petition for judicial review of a determination of the workers' compensation commissioner remanding the matter to the agency for further proceedings. Heinz argues the district court erred in concluding the agency determination is unsupported by substantial evidence and was based upon an irrational, illogical, or wholly unjustifiable application of law to fact.

**I.      Background Facts and Proceedings**

Tilton began working at Heinz, a soup business, in 1999; she has worked in various positions since that time. Tilton began experiencing back problems early on in her time at Heinz. In 2001, after working in other positions, she began working in the "prep room." Around this time, Tilton realized her back pain was job related. In or about 2010, Tilton began working in the "clean as you go" position, a physically demanding position, until she went on disability in April 2013. Although Tilton's back-pain symptoms increased when she began working in the clean as you go position, she has consistently and extensively sought treatment for her back pain since 2000. Over the years, Tilton has been given various work restrictions relative to her back issues. For example, in January 2006, Tilton's chiropractor placed her under weight and time restrictions for work. Then, from mid-February to late March 2006, Tilton went on disability and was excused from work as a result of her back issues. The record suggests she was also off of work for a period of at least seven weeks in the late summer and early fall of 2007. The record also discloses Tilton was on disability for a period of time in the summer of

2008, although the record does not affirmatively state the length of time this period of disability lasted. In February 2010, Tilton's chiropractor noted Tilton's back issues were "permanent" and she would be subject to "flare ups," some of which "will cause her to miss work," "as they have in the past."

A medical note from Dr. Dennis Bradley on March 11, 2010, states that Tilton had seen Dr. Gray, who took her off work. Shortly thereafter, Tilton began seeing Dr. Stan Mathew relative to her chronic back pain. Dr. Mathew's notes state Tilton was "still out of work due to low back pain" in April 2010. Tilton engaged in physical therapy over the next few months and, in June, underwent a joint injection. According to the notes from a follow-up appointment in July, the injection only provided relief "for a few days." Dr. Mathew cleared Tilton to return to work "without any restriction," effective July 12. However, Tilton was unable to return to work on that date due to the severity of her back pain. She returned to Mathew the following day and was ultimately scheduled to undergo an epidural steroid injection. That procedure took place in late July. By August 10, Tilton had been "pain free" for roughly two weeks. Her relief continued until early September, and Dr. Mathew cleared Tilton to return to work "without any restriction," effective September 8. Tilton returned to work, but her relief was short-lived. By early February 2011, Tilton's symptoms returned and she again discontinued working. The record indicates she did not return to work until early April. Tilton's back pain "has progressively gotten worse" since she began treatment with Dr. Mathew. Ultimately, on April 15, 2013, being unable to tolerate her back pain anymore, Tilton decided to go on disability. She has not worked since. On May 5, Tilton gave Heinz notice of a work injury that occurred on or about April 15.

In March 2015, Tilton filed a petition for arbitration and medical benefits with the commissioner alleging a cumulative-trauma injury manifesting on or about April 15, 2013. Following a hearing, the deputy commissioner entered its arbitration decision. The deputy concluded Tilton was aware "by 2011 that her condition was work related, serious, and potentially compensable" and, because "she did not provide notice to her employer until May of 2013 . . . and did not file a petition for benefits until 2015" her claim for benefits was barred by Iowa Code sections 85.23 and 85.26(1) (2015). Tilton appealed the decision to the commissioner. In his appeal decision, the commissioner's designee concluded Tilton's work injury manifested on or before September 8, 2010 and, because she did not give Heinz notice of the same within ninety days, her claim for benefits was barred by Iowa Code section 85.23.

In 2018, Tilton filed a petition for judicial review of the agency decision in the district court. Tilton argued the agency decision was irrational, illogical or wholly unjustifiable and unsupported by substantial evidence in the record. Following an unreported hearing, the district court concluded the agency applied an incorrect legal standard; substantial evidence does not support the agency decision; and, therefore, the decision was irrational, illogical, and wholly unjustifiable. The court remanded the matter to the agency for further proceedings. As noted, Heinz appeals.

## II.     Standard of Review

"Judicial review of agency decisions is governed by Iowa Code section 17A.19" (2018).[1]  *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017) (quoting *Kay-Decker v. Iowa State Bd. of Tax Review*, 857 N.W.2d 216, 222 (Iowa 2014)); *accord Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015). The district court acts in an appellate capacity in judicial-review proceedings.  *Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 838 (Iowa 2013) (quoting *City of Sioux City v. GME, Ltd.*, 584 N.W.2d 322, 324 (Iowa 1998)).  On appeal, this court "appl[ies] the standards of section 17A.19(10) to determine if we reach the same results as the district court."  *Brakke*, 897 N.W.2d at 530 (quoting *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010)); *accord Des Moines Area Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015).  Relief in a judicial-review proceeding is appropriate only "if the agency action prejudiced the substantial rights of the petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(a) though (n)."  *Brakke*, 897 N.W.2d at 530.

"Our review of a decision of the workers' compensation commissioner varies depending on the type of error allegedly committed by the commissioner." *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010).  Where the alleged "error is one of fact, we must determine if the commissioner's findings are supported by substantial evidence."  *Id.*; *see* Iowa Code § 17A.19(10)(f).  "If . . . the claimed error lies in the commissioner's application of the law to the facts, we

---

[1] References in this opinion to Iowa Code chapter 17A are to the version of the code in force when the petition for judicial review was filed, 2018.  References to chapter 85 are to the version of the code in force when the claim for benefits was filed with the commissioner, 2015.

will disturb the commissioner's if it is '[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact.'" *Harris*, 778 N.W.2d at 196 (quoting Iowa Code § 17A.19(10)(m)).

### III.     Analysis

Iowa Code section 85.23[2] provides:

> Unless the employer or the employer's representative shall have actual knowledge of the occurrence of an injury received within ninety days from the date of the occurrence of the injury, or unless the employee or someone on the employee's behalf or a dependent or someone on the dependent's behalf shall give notice thereof to the employer within ninety days from the date of the occurrence of the injury, no compensation shall be allowed.

Our supreme court has adopted a "manifestation test," which fixes "the date of injury as of the time at which the disability manifests itself." *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 287 (Iowa 2001) (internal quotation marks omitted) (quoting *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992)). "[A]n injury manifests itself when both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." *Id.* (internal quotation marks omitted) (quoting *Tasler*, 633 N.W.2d at 287). Likewise, "[t]he discovery rule delays the commencement of [the] limitation period . . . for giving notice, until the injured person has in fact discovered his injury or by exercise of reasonable diligence should have discovered it." *Dillinger v. City of Sioux City*, 368 N.W.2d 176, 179 (Iowa 1985).

> [A] cumulative injury is manifested when the claimant, as a reasonable person, would be plainly aware (1) that he or she suffers

---

[2] The legislature has since amended this statute to include the following language: "For the purposes of this section, 'date of the occurrence of the injury' means the date that the employee knew or should have known that the injury was work-related." 2017 Iowa Acts Ch. 23, § 3.

from a condition or injury, and (2) that this condition or injury was caused by the claimant's employment. Upon the occurrence of these two circumstances, the injury is deemed to have occurred. Nonetheless, by virtue of the discovery rule, the [limitations period for giving notice] will not begin to run until the employee also knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability, i.e., the claimant knows or should know the "nature, seriousness, and probable compensable character" of his injury or condition.

*Herrera*, 633 N.W.2d at 288 (quoting *Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 257 (Iowa 1880)); *see Dillinger*, 368 N.W.2d at 179 (indicating discovery rule also applies to toll limitations period for notice requirement contained in section 85.23).

While we agree with the district court that the appeal deputy "blurred the concept of when the injury is said to occur, or manifests, with the separate analysis under the discovery rule," we do not believe such blurring, by itself, mandates reversal. Reversal is only required where the "substantial rights of the person seeking judicial relief have been prejudiced." *See* Iowa Code § 17A.19(10). We disagree with the district court that the appeal deputy "failed to apply the appropriate legal standard regarding cumulative trauma injuries set forth in *Herrera*." The deputy separately concluded (1) Tilton realized she suffered from a work-related injury by 2001 and (2) by September 8, 2010 at the latest, Tilton "knew or should have known her physical condition was serious enough to have a permanent adverse impact on her employment"—the former obviously concerning the manifestation date and the latter the discovery rule. Although the appeal decision shows 2010, as opposed to 2001, as the manifestation date, instead of stating the injury manifested in 2001 and the discovery rule was satisfied to discontinue tolling of the limitations period no later than September 8, 2010, the

deputy otherwise applied the correct framework as laid out in *Herrera*, *see* 633 N.W.2d at 288, and we are able to deduce the deputy's ultimate legal conclusion. *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 634 (Iowa 2000) ("[A]n agency's decision is sufficient if it is possible to work backward from the agency's written decision and to deduce what must have been the agency's legal conclusions and its findings." (altered for readability) (quoting *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 909 (Iowa 1987))). We are therefore unable to conclude the agency decision was "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact," prejudicing Tilton's substantial rights. *See* Iowa Code § 17A.19(10)(m).

We turn to whether the agency's conclusion that by September 8, 2010, at the latest, Tilton "knew or should have known her physical condition was serious enough to have a permanent adverse impact on her employment." The district court answered that question in the negative, largely focusing on Tilton's improved condition and return to work around that time. Courts are not entitled to reweigh the evidence in a substantial-evidence review—we only determine whether substantial evidence supports the agency finding. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). "Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings." *Bearinger v. Iowa Dep't of Transp.*, 844 N.W.2d 104, 106 (2014) (quoting *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 65 (Iowa 2002)). "If the agency's findings are supported by substantial evidence, those findings are binding upon us." *Fed. Express Corp. v. Mason City Human Rights Comm'n*, 852 N.W.2d 509, 510–11 (Iowa Ct. App. 2014). "Just because the interpretation of the evidence is open to a fair difference

of opinion does not mean the commissioner's decision is not supported by substantial evidence," and we will "not consider evidence insubstantial merely because [we] may draw different conclusions from the record." *Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337 (Iowa 2008).

The appeal deputy concluded that by September 8, 2010, Tilton "knew or should have known her physical condition was serious enough to have a permanent impact on her employment." The appeal deputy relied on Tilton's long history of back issues and relative treatment, the opinion that her condition was permanent and will cause her to miss work in the future as it had in the past, and the fact that she missed several months of work in 2010 due to back issues. The district court ruled the appeal deputy's conclusion was not supported by substantial evidence, focusing on Tilton's improved condition and return to work with no restrictions. The record discloses Tilton has a long history of back issues, her condition waxed and waned for roughly ten years leading up to September 2010, and she had multiple disability-related absences from work which were followed by returns to work without any restrictions. Our duty is to "broadly and liberally apply" the agency's finding to uphold rather than defeat the agency decision; the controlling question here is "whether the evidence supports the finding actually made." *Taylor v. Iowa Dep't of Human Servs.*, 870 N.W.2d 262, 266 (Iowa Ct. App. 2015) (quoting *Al-Gharib*, 604 N.W.2d at 632). On September 1, 2010, Dr. Mathew's medical records provided, in part: "The patient will return to work on full duty on Wednesday, 09/08/2010." Also on September 1, he wrote a "return to work" release stating, "Terry Tilton may return to work on 9/8/10 without any restriction." And Tilton did go back to work on that date as directed, on full duty

and without restriction. As of that date, no doctor had ever given her permanent work restrictions. Under these circumstances, we must disagree that on that date Tilton knew that her back condition was serious enough to have a permanent adverse impact on her employment or employability, i.e., that she knew or should have known the nature, seriousness, and probable compensable character of her injury or condition. *See Herrera*, 633 N.W.2d at 288. Substantial evidence does not support the appeal decision conclusion that "[i]n this case, it is found claimant's manifestation date of injury is September 8, 2010."

On this appeal, we are limited to the determination made above, and neither we nor the district court may make independent findings. Accordingly, we reverse the district court's findings that identified a different manifestation date.

We affirm in part and reverse in part the order of the district court, and we remand to the district court for an order to reverse the ruling of the agency and remand for further proceedings consistent with this opinion.

## IV. Conclusion

We find the agency determination that Tilton's claim for benefits is barred by the application of Iowa Code section 85.23 was not the product of an irrational, illogical, or wholly unjustifiable application of law to fact. We further find the agency determination of September 8, 2010 as the manifestation date is not supported by substantial evidence in the record. We affirm in part and reverse in part the district court, and we remand the matter to the district court for the entry of an order to reverse the agency and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**