# IN THE SUPREME COURT OF IOWA

No. 15–0840

Filed December 30, 2016

Amended March 17, 2017

**JBS SWIFT & COMPANY** and **AMERICAN ZURICH INSURANCE COMPANY,**

Appellants,

vs.

**ROSALVA OCHOA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.

An employer seeks further review of a court of appeals decision affirming a district court judgment upholding a workers' compensation commissioner's award. **AFFIRMED.**

Mark A. King, James R. Colwell, and Patrick V. Waldron of Patterson Law Firm, L.L.P., Des Moines, for appellants.

James C. Byrne of Neifert, Byrne & Ozga, P.C., West Des Moines, for appellee.

**MANSFIELD, Justice.**

This case presents the question whether Iowa workers' compensation law prohibits an employee from collecting both permanent partial disability benefits and permanent total disability benefits at the same time when the employee suffers successive injuries at the same workplace. We find that the general assembly removed the legal barrier to this outcome in 2004. Accordingly, we uphold the commissioner's award, affirm the district court judgment, and affirm the decision of the court of appeals.

## I. Background Facts and Proceedings.

Rosalva Ochoa began working at JBS Swift & Company (Swift) in 2001. Ochoa had to make boxes, fill them with meat, and place them on a conveyor belt. Each box weighed approximately fifty pounds, and Ochoa would lift the boxes onto the conveyor belt hundreds of times a day. Ochoa was assigned these same job duties for the majority of her employment at Swift.

In early 2011, Ochoa began to feel pain in her left abdomen, which gradually became more severe. Ochoa consulted with Dr. Jerry Wille in February, who referred Ochoa to a second physician, Dr. Stephen Van Buren. Dr. Van Buren determined that Ochoa had developed a left inguinal hernia and recommended surgery. Ochoa underwent the surgery in March.

Following the hernia surgery, Ochoa returned to work. However, she continued to experience pain. Some months later, in November, Ochoa began to develop pain in her neck and right shoulder in addition to her abdomen. She saw Dr. Wille for these problems as well. Dr. Wille diagnosed her with cervicalgia and cervical radiculopathy in her neck

and tendonitis in her right rotator cuff. Ochoa's last day of work was December 15. Swift terminated her for absenteeism in January 2012.

On June 25, Ochoa filed two workers' compensation petitions against Swift and its workers' compensation insurance carrier, American Zurich Insurance Company. The first petition alleged an unscheduled cumulative left groin injury occurring on or about February 24, 2011. The second petition alleged an unscheduled cumulative injury to the neck and right shoulder, occurring on or about December 15, 2011.

Ochoa was examined by two independent physicians, one (Dr. Sunil Bansal) at the direction of her counsel and the other (Dr. Scott Neff) at the direction of Swift. Dr. Bansal found that Ochoa's hernia had caused a four percent impairment of the body as a whole, and her shoulder injury had caused a six percent impairment of the body as a whole. Dr. Bansal also recommended that Ochoa should be restricted from lifting above certain levels and should avoid frequent lifting, pushing, or pulling more than five pounds. Dr. Neff, on the other hand, concluded that Ochoa had no permanent functional impairment and was demonstrating symptom magnification and inconsistent effort.

An arbitration hearing on both claims was held before a workers' compensation deputy commissioner on June 25, 2013. The deputy found that Ochoa's injuries to her hernia, neck, and right shoulder arose out of her employment with Swift. The deputy found that Ochoa had sustained the hernia injury on February 24, 2011, resulting in a seventy percent permanent partial disability and 350 weeks of benefits. He ordered Swift to pay Ochoa healing period benefits of $477.18 per week from March 17, 2011 through June 13, 2011, and permanent partial disability benefits of $477.18 per week commencing June 14, 2011. The deputy further found that Ochoa sustained the neck and shoulder injury

on December 15, 2011, resulting in permanent total disability. The arbitration decision explained, "The combination of restrictions for the right shoulder injury and hernia injury has resulted in permanent total disability. . . . She is not likely to ever return to the workforce with her current physical limitations." Thus, the deputy ordered Swift to pay Ochoa permanent disability benefits of $478.44 per week commencing December 15. However, the deputy indicated that "[t]he permanent partial disability benefits . . . for the February 24, 2011 injury end at the commencement of this permanent total disability award." Hence, the deputy's award eliminated what would otherwise amount to overlapping partial disability benefits and total disability benefits.

Swift appealed the deputy's decision, and Ochoa cross-appealed. Swift urged the deputy had erred in finding Ochoa had sustained work injuries in February 2011 and December 2011, and also erred in the extent of the two awards of permanent disability benefits. Ochoa's cross-appeal was confined to one point. She asked that the awards "be allowed to run concurrently . . . to the extent the two awards overlap." Ochoa maintained that permanent total disability benefits are not subject to apportionment under Iowa Code section 85.34(7), and that effectively, the deputy's order had done just that.

Swift filed a six-page brief in resistance to Ochoa's cross-appeal. Swift argued therein that the deputy commissioner had not apportioned the awards pursuant to section 85.34(7). Instead, in Swift's view, the deputy had "simply recognized that at the point [Ochoa] became permanently totally disabled, she was necessarily no longer permanently partially disabled." Swift insisted that this was "an appropriate and reasonable application of the law," adding,

[T]here is no statutory provision allowing for such a double recovery as Claimant proposes. Nor do the applicable Code sections provide for any such double recovery. . . . The legislature provided that employees who are permanently totally disabled shall be compensated with permanent total disability benefits and persons with permanent partial disability shall be compensated with permanent partial disability benefits. There is obviously no indication by the legislature that a person who is no longer permanently partially disabled[,] because they are now permanently totally disabled, shall continue to receive PPD and PTD benefits. It is indeed absurd to suggest that a claimant can be permanently totally disabled and permanently partially disabled at the same time!

The commissioner overruled Swift's appeal but upheld Ochoa's cross-appeal. Thus, the commissioner affirmed the deputy's findings of two separate injuries and his determinations of industrial disability. However, the commissioner concluded that Ochoa's permanent partial disability payments should not have terminated as of the date when her permanent total disability payments commenced. The commissioner noted,

In this case claimant has sustained successive disabilities with the same employer, JBS Swift & Company, with a first date of injury on February [24], 2011 resulting in permanent disability and a second date of injury of December 15, 2011 also resulting in permanent disability. Therefore the provisions of Iowa Code section 85.34(7) are clearly applicable. The provision[s] of Iowa Code section 85.34(7) were enacted following passage of H.F. 2581, at which time the legislature also amended Iowa Code section 85.34(2)(u) and struck Iowa Code section 85.36(9)(c).

When successive disabilities occurred prior to the passage of the new statutory framework, overlapping of permanent partial disability benefits was not allowed by operation of Iowa Code section 85.36(9)(c). However, as noted above, that section of the Code was repealed. There is no provision in Iowa Code sections 85.34(7) or 85.34(2)(u) to prohibit the overlapping payment of permanent disability benefits. Defendants seek to set forth a policy argument that permanent partial disability must cease with a finding of a successive disability resulting in permanent and total disability.

The commissioner thus ordered Swift to pay a full 350 weeks of permanent partial disability benefits at the weekly rate of $477.18, commencing June 14, 2011, and permanent total disability benefits at the weekly rate of $478.44, commencing December 15, 2011. This means that Ochoa would receive over six years of overlapping weekly benefits—i.e., $477.18 plus $478.44—substantially in excess of the $680 per week she was earning when she stopped working for Swift.

Swift filed a petition for judicial review. In its brief to the district court, Swift specifically argued for the first time that Iowa Code section 85.34(3)(*b*) barred the simultaneous benefits. Following a hearing, the district court affirmed the entire ruling of the workers' compensation commissioner. That court addressed Swift's double recovery argument and rejected it on the ground that a permanent partial disability award and a permanent total disability award could not be apportioned under section 85.34(7). *See Drake Univ. v. Davis*, 769 N.W.2d 176, 185 (Iowa 2009).

Swift then appealed from the district court, and we transferred the case to the court of appeals. That court also upheld the commissioner's ruling in its entirety. It found sufficient evidence to sustain each of the two awards and also rejected Swift's argument that the concurrent permanent partial disability and permanent total disability awards are prohibited by Iowa Code section 85.34.

We granted Swift's application for further review.

**II.  Scope and Standard of Review.**

"When this court grants an application for further review, we retain discretion to review all the issues raised on appeal or in the application for further review, or only a portion thereof." *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 768 (Iowa 2016). Here, we elect to allow the

court of appeals decision to stand as the final decision on whether each award of benefits was supported by substantial evidence. We will limit our opinion to the legal question whether Iowa law permits simultaneous receipt of permanent partial disability benefits and permanent total disability benefits for successive injuries with the same employer.

We review the workers' compensation commissioner's interpretation of Iowa Code chapter 85 for errors at law. *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016). "In recent years, we have repeatedly declined to give deference to the commissioner's interpretations of various provisions in chapter 85." *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 65 (Iowa 2015) (citing numerous cases); *see also Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015) (recognizing that the legislature "has not vested the commissioner with the authority to interpret Iowa Code section 85.34(2)(*u*) and (7)(*a*)"). We do not believe the terms of the workers' compensation statute at issue here are "uniquely within the subject matter expertise of the agency." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010).

**III. Analysis.**

**A. Preservation of Error.** Before reaching the merits, we must address a question of error preservation. Ochoa contends that Swift failed to preserve error on its contention that section 85.34(3)(*b*) prohibits simultaneous receipt of permanent partial and permanent total disability payments. As Ochoa puts it, Swift "did not reference, cite to, and/or argue before the Agency that Iowa Code Section 85.34(3)(*b*) negates concurrent payment[s]."

We find that error has been preserved. We note first the procedural history of this case. The deputy's arbitration decision did not

allow concurrent benefits. Therefore, there was no reason for Swift to raise the issue. After Swift appealed the deputy's disability findings to the commissioner, Ochoa cross-appealed and argued that apportionment of permanent total disability benefits was not authorized by Iowa Code section 84.34(7). At that point, Swift filed a responsive brief on the cross-appeal. Therein, Swift disputed that the matter was one of apportionment under Iowa Code section 84.34(7) while also disputing that the "applicable Code sections provide for any such double recovery." Swift argued the law does not permit concurrent receipt of permanent partial disability benefits and permanent total disability benefits and a person cannot legally be partially disabled and totally disabled at the same time.

It is true that Swift's responsive brief did not specifically refer to Iowa Code section 84.34(3)(*b*). However, the issue of whether section 84.34 taken as a whole authorizes concurrent awards of permanent partial disability and permanent total disability benefits was certainly briefed by both sides and raised before the agency. We think it is more accurate to characterize Swift's present discussion of 84.34(3)(*b*) as additional ammunition for the same argument Swift made below—not a new argument advanced on appeal. *See Schneider v. State*, 789 N.W.2d 138, 147 (Iowa 2010) (finding that, despite not citing chapter 455B in the district court, the party "preserved th[e] subject for appellate review"); *Summy v. City of Des Moines*, 708 N.W.2d 333, 338 (Iowa 2006) (concluding that error was preserved even though the city failed to provide the trial court "with the same legal authorities in support of its position that it has brought to the attention of this court on appeal"), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d

699, 708 n.3 (Iowa 2016). Our view is reinforced by the fact that Ochoa, not Swift, was the party seeking interagency review on this point.

**B. Double Recovery Under Section 85.34.** We now turn to the merits of Swift's legal contention that concurrent awards for permanent partial and permanent total disability benefits amount to a double recovery prohibited by Iowa Code section 85.34.

Ochoa argues that our decision in *Drake University v. Davis* controls the outcome here. *See* 769 N.W.2d at 183–85. In that case, we interpreted section 85.34(7) and concluded that permanent total disability benefits may not be apportioned under that section. *Id.* at 185. Section 85.34(7) is entitled "Successive disabilities" and provides in part,

> *b.* (1) If an injured employee has a preexisting disability that was caused by a prior injury arising out of and in the course of employment with the same employer, and the preexisting disability was compensable under the same paragraph of subsection 2 as the employee's present injury, the employer is liable for the combined disability that is caused by the injuries, measured in relation to the employee's condition immediately prior to the first injury. In this instance, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer.
>
> (2) If, however, an employer is liable to an employee for a combined disability that is payable under subsection 2, paragraph "*u*", and the employee has a preexisting disability that causes the employee's earnings to be less at the time of the present injury than if the prior injury had not occurred, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer minus the percentage that the employee's earnings are less at the time of the present injury than if the prior injury had not occurred.

Iowa Code § 85.34(7)(*b*) (2015).

In *Davis*, the claimant had suffered three injuries during the course of her employment. 769 N.W.2d at 178–79. Following a

combined arbitration hearing, the claimant's first injury was found to have caused a fifteen percent permanent partial disability; the second injury was found to have caused a thirty percent permanent partial disability; and the third injury was found to have caused a one hundred percent loss of earning capacity, entitling the claimant to permanent total disability benefits. *Id.* at 180. The claimant's benefits were apportioned between the first and second injuries, but not between the second and third injuries. *Id.* at 180–81. In other words, the benefits for the permanent total disability award were not offset by the percentage of disability for which the claimant had already been awarded permanent partial disability. The employer appealed the disability award and claimed the permanent total disability benefits from the third injury should have been apportioned with the benefits from the second injury. *See id.* at 183.

We recognized that we "generally do not apportion the benefits from two successive work-related injuries without a statute allowing us to do so." *Id.* at 184 (citing *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 465 (Iowa 2004)). We observed that the plain language of section 85.34(7)(*b*) allowed apportionment of benefits for successive injuries in two situations: if "the preexisting disability was compensable under the same paragraph of section 85.34, subsection 2, as the employee's present injury," or if "an employer is liable to an employee for a combined disability that is payable under section 85.34, subsection 2, paragraph '*u.*'" *Id.* at 184 (emphasis omitted) (quoting Iowa Code § 85.34(7)(*b*) (2005)). Hence, those provisions would sustain apportionment when an employee like Davis suffered an industrial injury causing a fifteen percent permanent partial disability followed by an injury causing a thirty percent permanent partial disability at the same employer. *See id.*

at 184. The employee would be treated as having suffered only an additional fifteen percent disability due to the second injury. *See id.*

Yet both of these provisions in Iowa Code section 85.34(7) cross-referenced only section 85.34(2), relating to permanent partial disabilities. *See* Iowa Code § 85.34(7)(*b*). Hence, we concluded they did not justify apportionment between Davis's second and third injuries:

> The plain and unambiguous language of section 85.34(7)(*b*) indicates the only benefits subject to apportionment are those awarded under section 85.34(2). . . . The agency awarded Davis permanent total disability benefits under section 85.34(3). Permanent total disability benefits are not subject to apportionment under section 85.34(7).

> . . . Without an apportionment statute that applies to an award of permanent total disability benefits, there is no basis for the agency to apportion the award. Therefore, the agency was correct when it refused to apportion Davis's permanent total disability benefits.

*Davis*, 769 N.W.2d at 184–85 (citation omitted).

We see no reason to revisit our conclusion in *Davis* that permanent total disability benefits are not subject to apportionment under section 85.34(7). The plain language of the statute supports this conclusion.

Nonetheless, Swift argues that *Davis* is not dispositive because Swift is not contending that Ochoa's permanent disability benefits should be apportioned under section 85.34(7). Swift instead asks us to interpret and apply section 85.34 as a bar to concurrent permanent partial and total disability awards. This contention at least arguably was not raised or considered in *Davis*.

Swift maintains that once an employee is permanently totally disabled, such an employee can no longer be partially disabled in the eyes of the law and can no longer receive permanent partial disability benefits. Notably, the commissioner's decision here results in Ochoa

receiving $955.62 weekly in disability benefits for over six years, at which point the permanent partial disability benefits would stop and she would receive only the permanent total disability benefits. During that six-year-plus period of time, Ochoa would receive considerably more in disability benefits than the $680 per week she had previously been paid for working.

More particularly, Swift contends that section 85.34(3)(*b*) prohibits Ochoa from receiving overlapping benefits for a permanent partial and permanent total disability. This subsection, which relates to permanent total disability, provides,

> Such compensation shall be in addition to the benefits provided in sections 85.27 and 85.28. No compensation shall be payable under this subsection for any injury for which compensation is payable under subsection 2 of this section. In the event compensation has been paid to any person under any provision of this chapter, chapter 85A or chapter 85B for the same injury producing a total permanent disability, any such amounts so paid shall be deducted from the total amount of compensation payable for such permanent total disability.

Iowa Code § 85.34(3)(*b*) (2015).

Swift insists the last two sentences in the quoted paragraph mean a claimant cannot be compensated for more than a one hundred percent permanent disability at any given time. According to Swift, the commissioner's award in this case violates this provision because it effectively treats Ochoa as *more than* one hundred percent permanently disabled from December 15, 2011, the date when compensation began for Ochoa's permanent total disability, to February 27, 2018, the date when compensation will end for Ochoa's permanent partial disability. Swift contends this duplication of benefits is both illogical and prohibited by the statute.

Ochoa, on the other hand, argues that the language of section 85.34(3)(*b*) only prohibits overlapping permanent partial and permanent total disability benefits relating to the "same injury." Because the commissioner found that Ochoa had sustained two separate and distinct cumulative injuries—nearly ten months apart—the statute is inapplicable in her view.

As we have recently recognized,

> When interpreting the statutory provisions contained in chapter 85 of the Iowa Code, our goal is to determine and effectuate the legislature's intent. To determine legislative intent, we look to the language chosen by the legislature and not what the legislature might have said. Absent a statutory definition, we consider statutory terms in the context in which they appear and give each its ordinary and common meaning.

*Ramirez-Trujillo*, 878 N.W.2d at 770 (citations omitted). "We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent." *Evenson*, 881 N.W.2d at 367 (quoting *Branstad v. State ex rel. Nat. Res. Comm'n*, 871 N.W.2d 291, 295 (Iowa 2015)). Finally, we may consider "the statute's 'subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.' " *Id.* (quoting *Branstad*, 871 N.W.2d at 295).

Section 85.34(3)(*b*) prohibits permanent total disability compensation for "any injury for which compensation is payable" as a permanent partial disability. Iowa Code § 85.34(3)(*b*). Thus, the statute allows an employer to deduct compensation payable to any person under chapter 85 "for the same injury producing a total permanent disability." *Id.*

We agree with Ochoa that an employee's *injury* limits the scope of this subsection. "Injury" is a familiar term in workers' compensation.

*See Almquist v. Shenandoah Nurseries, Inc.*, 218 Iowa 724, 730, 254 N.W. 35, 38 (1934). An "injury" may occur because of a "traumatic or other hurt or damage to the health or body of an employee." *Id.* at 732, 254 N.W. at 39. An injury may also occur gradually under the "cumulative injury rule" "when the claimant, as a reasonable person, would be plainly aware . . . that he or she suffers from a condition or injury." *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 288 (Iowa 2001); *see also McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 373–74 (Iowa 1985). In either case, our precedents make relatively clear when a discrete "injury" occurs.

Thus, the use of the singular "injury" in section 85.34(3)(*b*) becomes important. So worded, this section prohibits an overlapping award of permanent total disability benefits for an injury only if that injury is already the basis for permanent partial disability benefits. In the event that "same injury" produces a permanent total disability, the employer is entitled to offset any permanent partial disability benefits.

It is true that the second sentence of Iowa Code section 85.34(3), which refers to "any injury" without using the term "same injury," might be ambiguous if the third sentence didn't exist. But there is a third sentence. That sentence elaborates on the second sentence by explaining how the bar on double compensation is to be carried out. And it allows the deduction of benefits only when the "same injury" is involved. *See Ramirez-Trujillo*, 878 N.W.2d at 770 (recognizing that "[w]e assess the statute in its entirety rather than isolated words or phrases").

The historical origin of this language also supports an interpretation limiting it to same-injury situations. When the legislature established our system of workers' compensation law over 100 years ago, it placed provisions related to permanent partial and permanent total disability within the same section. *See* Iowa Code § 2477-m9(i)–(j) (Supp.

1913); *see generally Warren Props.*, 864 N.W.2d at 311–14 (discussing thoroughly the history of Iowa workers' compensation law). However, the subsection governing permanent total disability made no reference to permanent partial disabilities, and vice versa. *See* Iowa Code § 2477-m9(i)–(j). Significantly, apportionment was covered in a separate subsection, which said,

> In computing the compensation to be paid to any employe[e] who, before the accident for which he claims compensation, was disabled and drawing compensation under the terms of this act, the compensation for each subsequent injury shall be apportioned according to the proportion of incapacity and disability caused by the respective injuries which he may have suffered.

*Id.* § 2477-m15(h).

In 1924, the general assembly split the provisions related to permanent partial and permanent total disability into separate sections. *See* 1924 Iowa Acts Ex.-Unpub. ch. 28, §§ 33–34 (codified at Iowa Code §§ 1395–1396 (1924), later renumbered at §§ 85.34–.35 (1946)). The foregoing provision on apportionment remained unchanged. *Id.* § 35 (codified at Iowa Code § 1397(8) (1924)).

In 1959, the legislature again revised the law. *See* 1959 Iowa Acts ch. 103. The existing section 85.34 relating to permanent partial disabilities and section 85.35 relating to permanent total disability were repealed and replaced with a single section, adopting a format similar to the original 1913 approach. *Id.* § 6. An accompanying bill explanation distilled the reasoning behind the move: "Clarification of the law is accomplished by placing total permanent disabilities and partial permanent disabilities in the same section where they belong." H.F. 690, 58th G.A., 1st Sess. Explanation (Iowa 1959). Once again, the legislature

did not alter the law relating to apportionment. *See* 1959 Iowa Acts ch. 103; *see also* Iowa Code § 85.36(8) (1962).

However, in 1959, the legislature did add language allowing reduction of benefits in the following instance:

> In the event compensation has been paid to any person under any provision of this chapter . . . of the Code, for the same injury producing a total permanent disability, any such amounts so paid shall be deducted from the total amount of compensation payable for such permanent total disability.

1959 Iowa Acts ch. 103, § 6 (codified at Iowa Code § 85.34(3)).  This language has not changed significantly since.

Accordingly, in the wake of the 1959 amendment, there were two provisions addressing the problem of overlapping benefits.  One provision in Iowa Code section 85.34(3) required offset of benefits for *the same injury*, and the other in section 85.36 required apportionment of benefits for *successive injuries* where benefits for the prior injury were still being paid.

There is no reason to believe that section 85.34(3) was ever designed to avoid overlapping benefits for separate injuries.  In fact, the legislature in 1959 left untouched section 85.36, which already governed the topic of successive or subsequent injuries.  *See Warren Props.*, 864 N.W.2d at 317; *see also* Iowa Code § 4.6 (2015) (providing that we may consider "[t]he circumstances under which the statute was enacted"); *Rhoades v. State*, 880 N.W.2d 431, 446 (Iowa 2016) (stating that "we ordinarily assume when a legislature enacts statutes it is aware of the state of the law").

Our caselaw has discussed what is known as the "full-responsibility rule."[1] We first used this term in a 1978 case. *See Anderson v. Second Injury Fund*, 262 N.W.2d 789, 791 (Iowa 1978). We discussed the rule in more depth in *Celotex Corp. v. Auten*, 541 N.W.2d 252, 254–56 (Iowa 1995). The full-responsibility rule provides, "Apart from statute, in a situation of two successive work-related injuries, 'the employer is generally held liable for the entire disability resulting from the combination of the prior disability and the present injury.' " *Id.* at 254 (quoting 2 Arthur Larson, *The Law of Workmen's Compensation* § 59.00, at 10-492.329 (1994)). We have recognized that the rule is "actually another way of describing our general rule governing apportionment of disability in workers' compensation proceedings. Absent a statute, we generally do not apportion the disability of two successive work-related injuries." *Excel Corp. v. Smithart*, 654 N.W.2d 891, 897 (Iowa 2002) (citation omitted), *superseded by statute*, 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 12, *as recognized in Warren Props.*, 864 N.W.2d at 320. Again: "[I]f two separate injuries are established or if two separate cumulative injuries are established, compensation is based on the existence of the two separate disabilities, both of which are recoverable under the full-responsibility rule, unless otherwise provided by statute." *Id.* at 898.

As we have already noted, beginning in 1959, the Iowa Code recognized two kinds of exceptions to the full-responsibility rule. One required apportionment of benefits when the employee was already "disabled and drawing compensation under the provisions of this

---

[1]Our recent decision in *Roberts Dairy v. Billick* contains a detailed discussion of this rule and the pre-2004 law. *See* 861 N.W.2d 814, 818–19 (Iowa 2015). We commend it to the reader.

chapter" for another injury. *See* Iowa Code § 85.36(9)(*c*) (2003) (originally codified at Iowa Code § 2477-m15(h) (Supp. 1913)). This apportionment statute reflected "the apparent judgment of our legislature that the worker loses his or her entitlement to two separate compensable disabilities and may only recover compensation of the total disability as a result of both injuries." *Excel Corp.*, 654 N.W.2d at 899; *see Mycogen Seeds*, 686 N.W.2d at 466 (recognizing that the intent of section 85.36(9)(*c*) was to "prevent overlapping or stacking of disabilities"). And it came into effect whether the second injury had resulted in partial or in total disability. Thus, in *Mycogen Seeds*, we concluded that this apportionment statute applied when a worker sustained a permanent partial disability of forty percent caused by one injury, and then during the period of benefits sustained a permanent total disability caused by a second injury. *Id.* at 467.

The other exception to full responsibility was the situation covered by Iowa Code section 85.34(3)(*b*), as enacted in 1959. *See* Iowa Code § 85.34(3) (2003) (originally codified at Iowa Code § 85.34(3) (1962)). When an employee had already received permanent partial disability benefits for an injury, and then qualified for permanent total disability benefits for the same injury, a deduction was required.

Then came the special session of the Iowa legislature in 2004. In that session, the general assembly repealed Iowa Code section 85.36(9)(*c*). *See* 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 12. Although it appears from our precedents that this former provision likely would have required apportionment here, the legislature replaced it with section 85.34(7)(*b*). *See id.* § 11; *see also Roberts Dairy*, 861 N.W.2d at 819 n.1 (discussing apportionment of disability from successive injuries under section 85.36(9)(*c*)). And as noted, section 85.34(7)(*b*) does *not*

apply to permanent total disability benefits.  *See Davis*, 769 N.W.2d at 185 ("Permanent total disability benefits are not subject to apportionment under section 85.34(7).").

Swift argues that section 85.34(3)(*b*) should fill in the gap and allow an offset here.  But apart from the difficulties presented by the actual *text* of section 85.34(3)(*b*), this argument requires us to assume that a provision the legislature opted *not* to change in 2004 should take on a different role than it had before 2004.  *See Celotex Corp.*, 541 N.W.2d at 256 (characterizing section 85.34(3) as providing that the "employer [is] entitled to credit for permanent partial disability payments made where employee sustains permanent partial disability and permanent total disability arising from same injury").  Normally, we follow the opposite presumption—namely, that when the legislature amends a statute and leaves some of it unchanged, the unchanged provision retains its prior meaning.  *See Jenkins v. Furgeson*, 212 Iowa 640, 644–45, 233 N.W. 741, 743 (1930) ("The Legislature having exercised the right of substitution in certain instances, the inference must be that, on other questions not specified, no substitution was intended.").

Here, the commissioner found that Ochoa suffered two cumulative injuries—one on February 24, 2011, and another on December 15, 2011.  The commissioner determined that Ochoa's first injury resulted in permanent partial disability and the second in permanent total disability.  Thus, although Ochoa was already entitled to compensation for a permanent partial disability at the time of her permanent total disability, the disabilities were caused by separate and successive injuries.  *Cf. Excel Corp.*, 654 N.W.2d at 899 (noting that "compensation awards are made retroactive to the date of injury").  Section 85.34(3)(*b*), on its face,

does not prohibit Ochoa from drawing compensation for permanent partial disability and permanent total disability concurrently, so long as the benefit awards do not arise from the same injury.

Thus, at the end of the day, Swift's argument is simply that the legislature would not have intended an employee who sustains successive injuries while working for the same employer to receive simultaneous benefits for both partial disability and permanent disability. Swift adds that it is incongruous for someone to be both partially disabled and totally disabled in the eyes of the law at the same time. And even Ochoa's counsel at oral argument could not explain why the legislature in 2004 would have wanted apportionment of benefits to occur for two partial disabilities but not for a partial disability followed by a total disability. The same logic seems to apply in both cases.

But our job is to follow what the legislature actually drafted in 2004, not what it might have wanted to draft. As the commissioner correctly observed, Swift's position is at best a "policy argument," because the legislature in 2004 removed the provision that could have prevented this double recovery from happening and replaced it with a provision that does not apply to permanent total disability.

Swift notes that the legislature incorporated the following statement of legislative intent into the 2004 amendment: "The general assembly intends that an employer shall fully compensate all of an injured employee's disability that is caused by work-related injuries with the employer without compensating the same disability more than once." 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20. Yet the legislature also said that "[t]his division does not alter . . . benefits for permanent total disability under section 85.34, subsection 3 . . . or change existing law in any way that is not expressly provided in this

division." *Id.* And the legislature added, "It is the intent of the general assembly that this division of this Act will prevent all double recoveries and all double reductions in workers' compensation benefits *for permanent partial disability*." *Id.* (emphasis added). These swirling cross-breezes in a statement of intent cannot steer us in a different direction from the prevailing current of actual statutory language.

**IV. Conclusion.**

For the reasons stated, we affirm the decision of the court of appeals and the judgment of the district court.

**AFFIRMED.**

All justices concur except Cady, C.J., who takes no part.