# IN THE COURT OF APPEALS OF IOWA

No. 22-1747
Filed August 9, 2023

**TERESA LIFORD,**
        Petitioner-Appellant,

**vs.**

**CHRISTENSEN FARMS, ACE AMERICAN INSURANCE CO., and SECOND INJURY FUND OF IOWA,**
        Respondents-Appellees.
_____

        Appeal from the Iowa District Court for Appanoose County, Lucy J. Gamon,

Judge.


        Teresa Liford appeals the district court's ruling that she is not entitled to

Second Injury Fund benefits. **AFFIRMED.**


        Michael O. Carpenter (until withdrawal) and Bryan J. Goldsmith of Gaumer,

Emanuel, Carpenter & Goldsmith, P.C., Ottumwa, for appellant.

        Abigail A. Wenninghoff of Kuper, Wenninghoff & Block, PC, LLO Omaha,

for appellees Christensen Farms and Ace American Insurance Co.

        Brenna Bird, Attorney General, and Sarah C. Timko, Assistant Attorney

General, for appellee Second Injury Fund of Iowa.


        Considered by Schumacher, P.J., and Chicchelly and Buller,  JJ.

**CHICCHELLY, Judge.**

Teresa Liford appeals the district court's ruling, which affirmed that she was not entitled to Second Injury Fund benefits for a left knee injury. The deputy commissioner determined that the injury developed as a sequela to the right knee injury that occurred at Liford's job, which did not justify awarding benefits from the Fund. Liford contends that she proved her injury was separate and distinct for the purpose of the second-injury claim. She also argues the "separate and distinct" rule cannot be applied to Second Injury Fund cases due to their conflicting purposes. Because substantial evidence shows the left knee injury was a sequela to the right knee injury, we affirm the district court's decision.

## I. Facts and Prior Proceedings

In the spring of 2014, Liford was working as a farrower for Christensen Farms. This job involved caring for the sows and piglets on the farm and moving the livestock. On March 10th, 2014, while reaching for a piglet, Liford's right knee gave out, and she fell to the floor hitting both knees. She saw her family physician for this injury, with a chief complaint of pain in the right knee. Despite a right knee meniscectomy performed by Dr. Vincent Christopher and physical therapy, Liford reports the pain persisted.

On December 5th, 2014, Liford visited a family practice for bilateral knee pain, reporting an onset of pain sometime between October and November after returning to work. Again, she was referred to Dr. Vincent, this time for magnetic resonance imaging (MRI) of the left knee. Liford's left knee pain was traced back to overuse from her "babying" the right knee, as well as adjustments to a new workplace layout with more twisting in small spaces. She was diagnosed with a

left medial meniscal tear.  While no specific injury to the left knee was noted, Liford was scheduled for a meniscectomy for that knee.

Liford filed for worker's compensation for both knee injuries, naming her employer as well as the Second Injury Fund.  From the medical reports and Liford's testimony, a deputy commissioner found that Christensen Farms was liable under the worker's compensation statute.  She also found that the left knee injury developed as a sequela from the right knee injury.  This was based primarily on the report from Dr. John Kuhnlein, who performed an independent medical examination and affirmed Dr. Vincent's conclusion that the left knee injury was a sequela.  The deputy commissioner found that Liford was not entitled to second-injury benefits as she had failed to prove that the December 5th incident resulted from a separate and distinct injury.  This was affirmed by the commissioner on appeal, as well as the district court following judicial review.  Liford appeals the district court's ruling.

## II.   Analysis

### A.  Standard of Review

We review workers' compensation decisions under the standards set in chapter 17A (2021).  In this case, the agency's decision was based on the interpretation of the worker's compensation statute.  "Interpretation of the workers' compensation statute is an enterprise that has not been clearly vested by a provision of law in the discretion of the commissioner."  *Gregory v. Second Injury Fund of Iowa*, 777 N.W.2d 395, 397 (Iowa 2010).  We reverse the agency's decision if it is based on an "erroneous interpretation" of the law.  *Id.*  Further,

because Liford raises an issue of proof of a factual finding, we review the decision for substantial evidence. Iowa Code § 17A.19(10)(f).

### B. Proof of Second Injury

We first consider whether Liford met her burden of proving she sustained a second, separate injury that qualifies her for compensation from the Fund. Liford asserts that the commissioner incorrectly interpreted *Gumm v. Easter Seal Soc'y of Iowa*, resulting in an erroneous application to the facts. 943 N.W.2d 23, 25 (Iowa 2020). While Liford claims that she only raises a question of law, it follows that we must determine whether there was substantial evidence after considering the proper reading of *Gumm*. *Id.*

An individual may receive compensation from the Second Injury Fund by showing (1) past loss of a hand, arm, foot, leg, or eye, (2) another compensable, work-related injury to such member or organ, and (3) permanent injury. Iowa Code § 85.64(1) (2019); *see also Second Injury Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 547–48 (Iowa 1995). Liford argues the commissioner's ruling misstated the holding in *Gumm* by requiring a showing that "the subsequent condition of the claimant [was not] a consequence of the first injury." 943 N.W.2d at 33. Instead, Liford asserts the holding in *Gumm* is captured in the first sentence, which limits the "separate and distinct" rule to cumulative injuries stemming solely from aggravation of the original injury. *Id* at 25. From this, Liford contends the commissioner should have evaluated whether her second injury was solely the result of aggravation of the first injury.

Like the district court, we disagree with this premise. While Liford quotes the beginning of *Gumm*, she omits the rest of the paragraph, which relates the

cumulative-injury standard to the relevant issue of review-reopening. Those circumstances are not before us today. Further, the court in *Gumm* clearly states its holding, which ultimately rules on the issue of review-reopening.[1] *Id.* at 33. If a cumulative injury is found, then the injury must be distinct and separate, with the language in *Gumm* suggesting that aggravation is one factor in determining that separate injury. *Id.*

Even if *Gumm* did apply in this case, it does not require that the agency conclude the second injury was in fact solely the result of aggravation from the first injury. The district court correctly stated that the burden of proof is on the petitioner; *Gumm* was not intended to shift that burden to the defendant. *See id.* at 28.[2] All relevant factors were considered, including the timing of both injuries and Liford's symptoms prior to getting the original injury evaluated.

Liford also cites *Second Injury Fund of Iowa v. Greenman*, which more closely reflects the fact pattern here. No. 05-0855, 2006 WL 3017955, at *1 (Iowa Ct. App. Oct. 25, 2006). In both cases, the claimants injured an extremity on one side before bringing an injury for the other side; Liford asserts the distinction between two separate body parts was the force behind the decision to award SIF benefits. Yet, *Greenman* addresses other factors that led to this decision, such as the duties being performed when each injury manifested. 2006 WL 3017955,

---

[1] "[We] hold the commissioner and the district court correctly ruled that where a claimant has received disability benefits for a prior compensable injury, the claimant is limited to the review-reopening remedy for additional disability benefits unless she can prove she has suffered another injury." *Gumm*, 943 N.W.2d at 33.

[2] "A compensable review-reopening claim filed by an employee requires proof by a preponderance of evidence that the claimant's condition is proximately caused by the original injury." *Gumm*, 943 N.W.2d at 28 (internal quotation marks and citation omitted).

at *4.[3] Even though the second injury was in the nature of a sequela to the first injury, the court in *Greenman* still emphasized that the second injury could not be "merely a consequence" of the first. 2006 WL 3017955, at *2. As the district court stated, we are not compelled to find the same outcomes among all similar cases. The record demonstrates the substantial evidence necessary to support the finding that Liford did not have a separate and distinct second injury.

## C. Applicability of "Separate and Distinct" to Second Injury Fund Claims

Next, Liford argues the "separate and distinct" rule does not apply to the Second Injury Fund because of their contradictory purposes. She asserts that applying this rule to this form of compensation results in a greater award for her, less accurately reflecting what her employer actually paid. We disagree with this interpretation.

### i. Error Preservation

The Fund argues this issue was not expressly raised before or decided by the agency or the district court on judicial review. Liford contends the argument is merely "additional ammunition" for her preserved claim. *See JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 893 (Iowa 2016). Assuming the issue is properly before us, we resolve this claim on the merits.

---

[3] Greenman injured her right arm "repeatedly lifting tubes out of a packer," while her left arm was injured doing computer work. *Greenman*, 2006 WL 3017955, at *4.

### ii. Merits

The Second Injury Fund was intended to encourage employers to hire previously disabled employees, while the "separate and distinct" rule was intended to prevent claim splitting when employees attempted to collect on cumulative injuries. *Second Injury Fund of Iowa v. Shank,* 516 N.W.2d 808, 812 (Iowa 1994); *Excel v. Smithart*, 645 N.W.2d 891, 898 (Iowa 2002). From this, Liford concludes that the "separate and distinct" rule was not meant to be applied in this case. While Liford does accurately state the purpose of the Second Injury Fund, she misconstrues the process by which the court assesses its obligations.

With a second-injury claim, the employer is responsible for the injury caused during the employment, while the Second Injury Fund is responsible for the cumulative effect of the injuries; however, the obligations of the Fund are not assessed until the liability of the employer has been decided. *Second Injury Fund v. Neelans*, 436 N.W.2d 355, 358 (Iowa 1989); *Second Injury Fund of Iowa v. Braden*, 459 N.W.2d 467, 473 (Iowa 1990). This does not indicate the explicit claim splitting that Liford asserts. Additionally, the language in section 85.64 suggests the commissioner should analyze for two distinct injuries as the code references a "previous" injury, and the second injury must be deemed compensable. Iowa Code § 85.64(1); *Bergeson*, 526 N.W.2d at 547–48. This is further evidenced by the fact that, as the Fund points out, there is no requirement that the first injury be work-related. *Gregory*, 777 N.W.2d at 400 (Iowa 2010).

As the Fund argues, the commissioner assessed the employer's liability for the alleged injury to the left knee before assessing the Fund's involvement and found no compensable injury separate from the incident on March 10th. The

findings clearly state that the right knee injury was compensable while the left knee injury was deemed a sequela. Again, this finding has substantial evidence to support it, and we find that Liford did not satisfy the necessary elements to earn her benefits from the Second Injury Fund. For these reasons, we affirm the district court's ruling.

**AFFIRMED.**