# IN THE COURT OF APPEALS OF IOWA

No. 22-2075
Filed December 20, 2023

**ARCHER DANIELS MIDLAND,**
    Petitioner-Appellant/Cross-Appellee,

**vs.**

**RICHIE WILLIAMS,**
    Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, Judge.

An employer appeals the district court's ruling on judicial review of the workers' compensation commissioner decision. An employee cross-appeals the district court's ruling affirming that he is not entitled to healing period benefits. **REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Peter J. Thill and Brandon W. Lobberecht of Betty, Neuman & McMahon, P.L.C., Davenport, for appellant/cross-appellee.

Andrew M. Giller of Rush & Nicholson, P.L.C., Cedar Rapids, for appellee/cross-appellant.

Considered by Ahlers, P.J., Badding, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**AHLERS, Presiding Judge.**

In 2018, while working at Archer Daniels Midland (ADM), Richie Williams fell on his right side and sustained an injury. Williams eventually underwent surgery to his right shoulder. After recovering from surgery, Williams returned to work without restrictions.

Williams filed a claim for workers' compensation benefits for his injury. He sought industrial disability benefits based on a claim that his injuries occurred proximal to the glenohumeral joint, so the injury was to his body as a whole rather than a scheduled shoulder injury under Iowa Code section 85.34(2)(n) (2018). He also sought healing period benefits for days he called in sick to work before his surgery. Following a hearing, the deputy workers' compensation commissioner found that the injury was to a scheduled member (i.e., the shoulder) rather than to Williams's whole body and he was not entitled to healing period benefits for days when he called in sick to work.[1] Both parties appealed to the workers' compensation commissioner on multiple issues, and the commissioner affirmed the deputy commissioner's decision.

Both parties sought judicial review of the commissioner's decision through Iowa Code chapter 17A.[2] Williams sought reversal of the commissioner's decision that his injury was limited to a scheduled shoulder injury and that he was not entitled to healing period benefits. ADM argued that Williams failed to preserve

---

[1] The hearing involved other issues that were resolved by the deputy commissioner, but we confine our discussion to the issues that are raised on appeal.

[2] The parties raised several issues, but we again confine our discussion to the issues raised on appeal.

error on his challenge to the scheduled nature of his injury because he took a different tack on judicial review when claiming his injury extended to his whole body. The district court determined the issue was preserved and reversed the commissioner, remanding to the agency to make further disability findings as to all body parts affected. The district court affirmed the commissioner's decision denying Williams's claim for healing period benefits for his sick days.

ADM appeals, arguing Williams failed to preserve error on the issue of whether the injury extended to his whole body. Williams cross-appeals, arguing the district court erred by failing to reverse the commissioner's decision denying him healing period benefits.

Iowa Code chapter 17A guides our review of agency decision-making. *Chavez v. M.S. Tech. LLC*, 972 N.W.2d 662, 666 (Iowa 2022). We assess whether we come to the same conclusions as the district court. *Id.* When reviewing decisions of the workers' compensation commissioner interpreting Iowa Code chapter 85, we review for correction of errors at law rather than deferring to the agency's interpretation "because the legislature has not clearly vested the commissioner with authority to interpret that chapter." *Id.* That said, "[w]e accept the commissioner's factual findings when supported by substantial evidence." *Id.* (quoting *Gumm v. Easter Seal Soc'y of Iowa*, 943 N.W.2d 23, 28 (Iowa 2020)). "Evidence is substantial if a reasonable mind would find it adequate to reach the same conclusion." *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016) (quoting *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 89 (Iowa 2013)). Evidence is not insubstantial just because it could lead reasonable minds to different conclusions. *Id.*

## I.     Error Preservation

We begin with ADM's claim that Williams did not preserve error on his argument that he is entitled to body-as-a-whole benefits because he suffered injuries to his shoulder and arm.    This issue stems from the differences in compensation for injuries to scheduled body parts and unscheduled body parts. Iowa Code section 85.34(2)(a)–(u) provides a schedule of injuries to specified body parts and how they are compensated, while section 85.34(2)(v) covers injuries that do not fall under the scheduled-member subsections.[3]  *See Chavez*, 972 N.W.2d at 666–67 (describing the difference between scheduled injuries and unscheduled injuries).   In addition to providing a greater potential number of weekly benefits than any scheduled injury, section 85.34(2)(v) also calls for disability to be based on the worker's industrial disability, which is based on loss of earning capacity rather than strictly functional impairment.  *Id.*

To better understand the issue over error preservation, a timeline in the development of this case, legislative amendments, and interpretation of those amendments is useful.   Prior to 2017, shoulder injuries were considered unscheduled injuries to the body as a whole.  *See Second Inj. Fund v. Nelson*, 544 N.W.2d 258, 269 (Iowa 1995) ("We have previously held that an injury to a joint such as a hip or shoulder should be treated as an injury to the body as a whole, not as a scheduled injury.").   However, "[i]n 2017, the legislature amended

---

[3] Iowa Code section 85.34(2)(n) provides: "For the loss of a shoulder, weekly compensation during four hundred weeks."  And Iowa Code section 85.34(2)(v) provides: "In all cases of permanent partial disability other than those [previously described,] the compensation shall be paid during the number of weeks in relation to five hundred weeks . . . ."

section 85.34(2) to add 'shoulder' to the list of scheduled injuries and set the benefits schedule for 'the loss of a shoulder' to 'weekly compensation during four hundred weeks.'" *Chavez*, 972 N.W.2d at 667 (citation omitted). But the legislation did not define "shoulder." *Id.*

The lack of definition in the new legislation led to legal tussles over what constitutes a "shoulder." Resolution of those tussles started to shape the definition of the term, beginning with two decisions by the workers' compensation commissioner in *Deng v. Farmland Foods, Inc.*, File No. 5061883, 2020 WL 5893577 (Iowa Workers' Comp. Comm'n Sept. 29, 2020), and *Chavez v. MS Technology, LLC*, File No. 5066270, 2020 WL 6037534 (Iowa Workers' Comp. Comm'n Sept. 30, 2020). In *Deng*, the commissioner determined that the term "shoulder" in section 85.34(2)(n) is not limited to the glenohumeral joint but also includes the muscles that make up the rotator cuff. *Deng*, 2020 WL 5893577, at *10. In *Chavez*, the commissioner built on the foundation laid in *Deng* and concluded that a labral tear, a subacromial decompression, or both would be injuries to the "shoulder." *Chavez*, 2020 WL 6037534, at *3–4.

The commissioner's decision in *Chavez* posed a problem for Williams, because, as he admitted in his brief to the deputy, the injured parts of his body "fall within the [c]ommissioner's definition of the shoulder [the commissioner] articulated in *Chavez*." Of course, having the same injury that was found to be a shoulder injury in *Chavez* hampered Williams's ability to argue before the agency that his injuries were unscheduled injuries to his body as a whole. To try to overcome that problem, Williams took one and only one tack. He argued the commissioner's *Chavez* decision on the issue of what body parts constitute the

shoulder was "wrongly decided" and he "hereby preserves this issue for appeal." After losing this argument before the deputy due to the commissioner's *Chavez* decision, Williams appealed to the commissioner and repeated his argument on this issue verbatim.

After briefs were submitted to the commissioner on intra-agency appeal, the supreme court filed its decision ruling on the commissioner's interpretation of the term "shoulder" in *Chavez*.  972 N.W.2d at 667–68.  The supreme court agreed with the commissioner's interpretation and held that "shoulder" is not limited to the glenohumeral joint but also includes "all of the muscles, tendons, and ligaments that are essential for the shoulder to function."  *Id.* at 668.  In Williams's case, the commissioner affirmed the deputy's decision limiting Williams to benefits from a scheduled shoulder injury.

As Williams pursued judicial review of the commissioner's ruling, his entire argument before the agency on the extent of his injury—that the commissioner's *Chavez* decision was wrongly decided—was dead in the water due to the supreme court's decision on judicial review.  So, Williams charted an entirely new course. He argued that he sustained an injury to both his shoulder and his arm.  This new argument triggered the error-preservation issue here.

The district court found that Williams preserved this issue for judicial review because the parties have always disputed whether Williams's injury qualified as a scheduled-member shoulder injury or a body-as-a-whole industrial disability.  We respectfully disagree.  "[J]udicial review of administrative action is limited to questions considered by the agency."  *Pruss v. Cedar Rapids/Hiawatha Annexation Special Loc. Comm.*, 687 N.W.2d 275, 285 (Iowa 2004).  To preserve

error on an issue, Williams needed to raise the issue during the agency proceedings and not for the first time during judicial review. *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 647 (Iowa 2013) ("We have held a party preserves error on an issue before an agency if a party raises the issue in the agency proceeding before the agency issues a final decision and both sides have had an opportunity to address the issue."). The question is whether Williams's argument that the injury extends to the body as a whole because he suffered impairment in both his arm and shoulder is a wholly new argument or simply "additional ammunition for the same argument." *See JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 893 (Iowa 2016).

Neither party introduced evidence to support or rebut the contention that the elbow/arm impairment was separate from the shoulder impairment, nor did either party make any arguments before the agency to support or rebut the contention that the elbow/arm impairment should cause the injury to be classified as an industrial disability. *See Jimenez*, 839 N.W.2d at 647 (recognizing error is preserved if there is a final ruling and both sides have been able to address the issue). The argument must be made specifically enough "to alert the court and opposing counsel to the claims he now raises." *Pharaoh-Carlson v. Hy-Vee, Inc.*, No. 13-1446, 2015 WL 566666, at *4 (Iowa Ct. App. Feb. 11, 2015). The specifics of Williams's argument are factually different such that neither the agency nor ADM were alerted to it until it was raised on judicial review. On judicial review, the district court found error on an issue the agency never actually considered. And even if that was a mistake on the part of the agency, it was Williams's responsibility to obtain a ruling on the issue. *See KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d

308, 329 (Iowa 2010) ("When an agency fails to address an issue in its ruling and a party fails to point out the issue in a motion for rehearing, we find that error on these issues has not been preserved.").

This is not an instance where Williams clearly made the argument but simply failed to cite a specific legal authority. *See Ochoa*, 888 N.W.2d at 893. Nor is it a case where it is clear that he was arguing the issue but did not specifically name the theory upon which he relied. *See Off. of Consumer Advoc. v. Iowa State Com. Comm'n*, 465 N.W.2d 280, 283–84 (Iowa 1991) (finding error was preserved when a party raised a Fourteenth Amendment due process claim even though it never specifically mentioned the due process clause because it could not have been arguing anything other than procedural unfairness). Rather, it is a case of Williams finding an alternative way to make his case late in the process and trying to dress it up as a preserved issue. We are not persuaded that Williams raised this issue before the agency. Thus, we find the district court erred in deciding the issue was preserved for judicial review. *Cf. Schoenberger v. Acuity*, No. 22-1613, 2023 WL 2908622, at *2–3 (Iowa Ct. App. Apr. 12, 2023) (finding error preserved where claimant raised his industrial disability argument based on the combination of shoulder and arm injuries on appeal to the commissioner). As a result, we reverse on ADM's appeal and remand for entry of an order denying Williams's petition for judicial review as it relates to challenging the commissioner's ruling that his injury is limited to a scheduled shoulder injury.

## II.     Healing Period Benefits

Williams called in sick from work several times due to his shoulder pain and sought healing period benefits for those days. The commissioner denied his

request, and Williams seeks reversal of the commissioner's decision denying him healing period benefits.

From the date Williams injured his shoulder until he underwent surgery for the injury, Williams worked at ADM under restrictions. The deputy commissioner found that ADM did not provide a formal or written offer of suitable work but instead simply had Williams find work to do within his restrictions. At least once, Williams was reprimanded for not working when he was unable to find something he could do. During this period when Williams had returned to work under restrictions, he experienced shoulder pain and called in sick, resulting in him missing fifty-two days of work.

The commissioner[4] found the work ADM provided to Williams suitable and that Williams "does not have license to just call in when his injured body part is particularly sore and then later claim healing period for those dates." The commissioner also addressed ADM's failure to put the offer of work in writing. The commissioner determined that, in an instance where the employee returned to work, the failure to provide a written offer of work does not give the employee the option to collect healing period benefits for days the employee does not feel well enough to come in.

Williams insists ADM did not meet its responsibility to offer him suitable work for two reasons. First, he claims the work was not suitable because it is not clear

---

[4] Because the commissioner adopted the deputy commissioner's proposed ruling, we treat the two decisions as one and refer to them collectively as the commissioner's ruling. *See Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 556 n.2 (Iowa 2010) (following the same method for referencing the two decisions of the agency).

from the record that Williams was able to avoid work outside his restrictions. Second, he points out that the offer was not in writing, as required by section 85.33(3)(b). As part of his argument, he contends his return to work should not preclude him from collecting healing period benefits for his sick days.

As to Williams's first argument, substantial evidence supports the commissioner's finding that the work offered to Williams was suitable. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 519, 524 (Iowa 2012) (noting that the question whether an employer offered suitable work is ordinarily a fact question, the resolution of which must be affirmed if supported by substantial evidence). ADM allowed Williams to return to work while only working within his restrictions. Williams's supervisor, whom the commissioner found credible, explained the light-duty jobs given to Williams during this time. Williams argues that the reprimand he received for sitting around when he couldn't find a task to do raises the question of whether he was allowed to avoid work outside his restrictions. But nothing in the record suggests ADM ever asked Williams to do anything outside his restrictions. We cannot find lack of substantial evidence that Williams was offered suitable work simply because one could look at the reprimand and perhaps conclude that the work offered to Williams was not within his restrictions. *See Evenson*, 881 N.W.2d at 366 ("An agency's decision does not lack substantial evidence because inconsistent conclusions may be drawn from the same evidence." (quoting *Coffey*, 831 N.W.2d at 89)). The evidence in the record is sufficient to allow a reasonable factfinder to conclude that ADM offered Williams suitable work. *See id.*

We also do not find it appropriate to permit ADM's failure to put the offer of work in writing to lead to the extreme result Williams requests. Section 85.33(3)(a) precludes an employee from receiving healing period benefits if the employer offers suitable work and the employee refuses. Under section 85.33(3)(b), the offer of work must be in writing. The employee's refusal must also be in writing. Iowa Code § 85.33(3)(b). Williams suggests that because the offer was not in writing, ADM cannot now argue that it offered suitable work. He reasons that because the offer of work was not in writing, it is not necessary to address whether he refused the work and we should reverse the denial of healing period benefits. But we find this section simply adds a hurdle to an employer's defense—a defense not applicable here due to Williams's acceptance of the work. *See Cent. Iowa Fencing, Ltd. v. Hays*, No. 21-1530, 2022 WL 2826011, at *6 (Iowa Ct. App. July 20, 2022) (holding that an employer may not defend against a claim for healing period benefits by asserting that the employee refused work when the offer of work was not in writing). Because ADM is not claiming Williams refused work, it is not defending his claim for healing period benefits on that basis. Williams's undisputed return to work made any failure to put the offer of work in writing inconsequential. The writing requirement does not independently create grounds for an employee to recover healing period benefits, as Williams's argument suggests.

Regardless, Williams is only entitled to benefits for the days he did not work if we find he was otherwise eligible to receive them. But Williams returned to work, and, under section 85.34(1), doing so cuts off his entitlement to healing period

benefits.[5]  Williams urges us not to use his return to work as a barrier to granting him healing period benefits.  He suggests that to find his return to work discontinued his healing period would create unfair results by punishing employees who accept unsuitable work and allow employers to act unscrupulously.  But the statute is clear that an employee is entitled to healing period benefits only until the employee returns to work.[6]  We cannot read in an exception to the statute to avoid potential undesirable outcomes.  *See Goche v. WMG, L.C.*, 970 N.W.2d 860, 866 (Iowa 2022) ("[I]t is not our role to rewrite the Iowa statute in the guise of interpretation.").  We come to the same conclusion as the commissioner that, upon returning to work, Williams no longer qualified for healing period benefits.

Because substantial evidence supports the finding that ADM offered Williams suitable work, Williams accepted that work, and Williams returned to work, he cannot now argue for healing period benefits for the days he called in sick following his return to work.  Therefore, on cross-appeal, we affirm the district court's decision denying Williams's petition for judicial review of the commissioner's decision denying additional healing period benefits.

---

[5] Iowa Code section 85.34(1) states:

> If an employee has suffered a personal injury causing permanent partial disability for which compensation is payable as provided in subsection 2 of this section, the employer shall pay to the employee compensation for a healing period, as provided in section 85.37, beginning on the first day of disability after the injury, and until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of the injury, whichever occurs first.

[6] Of course, a new healing period as a result of additional treatment or reaggravating the injury is not precluded.  *See Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 8 (Iowa 2012).

**III.    Conclusion**

On ADM's appeal issue, we reverse and remand.  We reverse that part of the district court's decision granting Williams's petition for judicial review challenging the commissioner's decision to compensate Williams for a scheduled shoulder injury only.  We remand to the district court to issue an order denying Williams's petition for judicial review on that issue.

As to Williams's cross-appeal, we affirm the district court's decision denying Williams's petition for judicial review challenging the commissioner's decision to deny additional healing period benefits.  Costs on appeal are assessed to Williams.

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**